Argued October 18, affirmed November 7, 1951

# KOCH *v.* RICE
### 237 P. 2d 494

*William E. Dougherty,* of Portland, argued the cause for appellant. With him on the brief were Robin D. Day, of Salem, and Maguire, Shields, Morrison & Bailey, of Portland.

*Stuart W. Hill,* of Portland, argued the cause for respondent. With him on the brief were W. G. Keller and Kerr & Hill, of Portland.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and TOOZE, Justices.

HAY, J.

This suit was instituted under the provisions of §§ 67-601 to 67-607, inclusive, O.C.L.A., to foreclose an asserted lien for labor, skill and materials expended upon a chattel.

Defendant was owner of a tractor described as a 1937 D6 caterpillar. It had originally been equipped with a "bulldozer" blade, which is a steel blade affixed to the front of a tractor by heavy steel arms, and is used principally in moving earth in grading operations and the like. The blade is raised and lowered by a power control unit, usually installed on the rear end of the tractor. From defendant's tractor the bulldozer blade and the control unit had been removed, and a towing winch installed in the place where the control unit had been. Defendant decided to reinstall the bulldozer blade, with a power control unit upon the forward end of the tractor. He owned a power control unit which had been removed from another make of tractor, and he thought it would be possible to adapt it for use upon the D6. Plaintiff operated a small garage and machine shop at St. Paul, Oregon. He had two em-

ployees, Lester Voshell and Melvin Schroeder, who did his welding and mechanical work. Defendant employed plaintiff to do the installation work in question.

The amount of plaintiff's claim for labor and materials, as stated in his complaint, was $881.07. He asked judgment for that sum, his costs, and $250.00 as attorney's fees. The answer was a general denial, with an affirmative defense that plaintiff's work under the contract was done so unskillfully and improperly as to be of no value; that it had to be redone; and that defendant suffered damages in the sum of $288.00 through incidental loss of use of the tractor. After a hearing, the trial judge found that the evidence showed "that the work was an absolute and complete failure, and that everything that they [plaintiff] did on this cat was valueless." He held that plaintiff was not entitled to a lien, and entered a decree dismissing the cause, with costs. Plaintiff appeals.

The parties disagree as to what were the terms of their agreement. Defendant's foreman, Whelchel, testified that he had a preliminary talk with plaintiff at the latter's shop at St. Paul, in the course of which he told plaintiff that the work consisted of mounting a front end control unit upon a 1937 D6 caterpillar. He asked plaintiff if he had a man who was capable of doing that kind of work on heavy equipment. Plaintiff said that he did, and referred him to Voshell. Whelchel thereupon took Voshell out to look at the tractor, and asked him if he could install the power control unit. Voshell said that he thought he could.

The front-end power control unit was described by defendant as "a small drum driven off of the front of the crank shaft which handles a cable which runs up through a set of shivs on top of an A-frame and down onto the blade, with a control arm which then runs back

to the driver's seat and through use of that control arm he can raise or lower the bulldozer blade.''

According to Whelchel, he told Voshell that the main thing was to get the control unit as far back as possible from the front end, in order to counteract the overbalancing tendency which comes from the weight of the bulldozer blade. Voshell apparently understood this, and claimed that he did place the control unit as far back as he possibly could without cutting through the A-frame of the tractor. In this, as we shall show, the evidence indicates that he was mistaken.

Voshell testified that after he had installed the control unit he was twice obliged to take it off again and reinstall it, because Whelchel told him that it ''wasn't right.'' He conceded that Whelchel's objection was sound. Thereafter, when the job, in Voshell's estimation, had been nearly completed, it was found that the blade would not clear the control unit in being raised or lowered. Voshell said that Whelchel told him to lengthen the blade arms, which had the effect of moving the blade farther forward. Whelchel, on the contrary, said that he made no suggestions whatever in this connection, and that lengthening the arms was Voshell's idea. Whelchel left the scene, and when he next returned the arms had been lengthened. He tested the tractor in operation for an hour or an hour and a half, and found that, when he lowered the blade to pick up a load of dirt, the tractor's nose would go right down on the ground, which had the effect of standing the machine ''practically on end.'' Moreover, the drive shaft was not true, and because of this one of the bearings that held the shaft burned out on this test run. He said that, on several occasions, he asked Voshell if he could not get the control unit back farther, but Voshell said he could not. Whelchel testified: ''If it was just

putting it [the unit] on there, bolting it on, I could have done it myself, but that is the reason I had to hire a mechanical man that was engineering and adapting a piece of machinery to another one.''

Defendant finally determined that, because of the delay and the unsatisfactory work, the only course open to him was to have someone else do the job. He therefore had the tractor hauled to Portland, and had the control unit and blade installed by a concern there. One of the owners of that concern described the situation which had resulted from plaintiff's work as follows:

"Well, when they brought it [the tractor] in the blade would run up and down, but the power unit, or power control unit, as the name of the drum and controls and everything are all called, was set way too far ahead on the cat and the arms were lengthened out on the dozer which throwed so much weight out on the front of the cat that it was riding on the front of the tracks all the time, and also the guards that were put on the drum were so big and bulky and hung so low that they wouldn't clear the dirt while the cat was operating. * * *''

He summarized the matter by saying that the installation was too far forward, which created too much leverage on the front end, which had the effect of stalling the tractor in operation, and that the adapter shaft was crooked. The defective installations were thereupon removed, the control unit, without cutting the A-frame, was moved back approximately 16 inches, and the blade arms were readjusted. The tractor then operated efficiently.

Voshell was plaintiff's principal witness. He testified that at first the job looked to him to be an impossibility, but that between defendant and his men, plaintiff and himself, they "got it figured out.'' None of them, he said, really thought "that it would work satisfac-

tory," but he was given to understand that defendant "just wanted to put a drum on there to get rid of the cat, I mean to sell it, * * * it was a good selling point." Defendant flatly denied that he had any intention of selling the tractor, and, indeed, Voshell afterwards contradicted himself by saying that he did night work on the job because they "wanted to get the job done, they wanted to use it, is what they wanted to do, and I was trying to do my best to get it done so they could use it." There was credible testimony on the part of defendant that he had work on hand in which he intended to use the tractor as soon as the blade and control unit were installed, and that he was obliged, by reason of the delay in getting the work done, to rent another tractor to take its place. Moreover, at the time of the hearing herein, which was more than a year after plaintiff worked upon the tractor, defendant still owned it and was using it. It is apparent that the trial judge was not favorably impressed by Mr. Voshell's testimony, and we ourselves feel that it does not carry conviction.

 Plaintiff contends that the trial court misconceived the nature of his undertaking. He says that there was no warranty on his part that when the work was completed the machine would be reasonably adapted for the purpose for which it was intended. No such warranty, he says, is implied in a sale of a secondhand machine, citing *Durbin v. Denham,* 106 Or 34, 36, 210 P 165, 29 ALR 1227, and, by anology, he seeks to apply the same principle to work such as was involved here. The case is before us to be heard de novo. There was direct and material contradiction between the testimony of the witnesses on either side. Under those circumstances we must give considerable weight to the findings of the trial judge, but in doing so we add that in our opinion his findings were supported by the weight of the evi-

dence. *Blackburn v. Maloney,* 189 Or 76, 84, 218 P2d 459. Voshell, as we have said, admitted that Whelchel instructed him to place the control unit as far back as possible, and that he undertook to do so. In that connection, it was necessary for him to install the control unit and blade in such locations that the blade could be raised and lowered freely, and that the tractor would not be overbalanced when in operation. It would be absurd to expect the owner of the machine to accept as satisfactory an installation which so overbalanced the machine that when it was attempted to be operated as a bulldozer it "practically stood on end." Moreover, there was an implied covenant on the part of plaintiff that the work would be performed skillfully, and if, by reason of lack of skill, his work was without value, he cannot recover compensation therefor. 58 Am Jur, Work and Labor, § 40, note 11.

Voshell's protestations of ignorance and inexperience respecting what was required of him in doing the work were contradicted by his own testimony, as follows:

"Q. * * * What was their [defendant's] instruction about where to place the drum [the control unit]? * * * A. They didn't have any choice, it could only go one spot. The only changing we could make on that was either lengthening the shaft or putting the drum back closer to the—the only bad thing about that was that with the drum sticking way out there *it made too much weight on the front end of the cat,* the blade was too long, the arms were too long, and we tried to get that drum back as far as we could, as close to the radiator as we could, and we did just that. (Italics ours.)

"* * * A. They should have dismantled that cat, the front end of that and moved the radiator back, lengthened the frame,—

"Q. Well, without doing those jobs,— A. That is the only way it could have been done."

■■ Plaintiff complains that defendant should not be permitted to enjoy the benefits of part of the work and pay for none of it. Plaintiff's complaint, in addition to setting forth his claim of lien and seeking its foreclosure, stated a cause of action upon quantum meruit for labor performed and materials furnished. In order to be entitled to a lien, it was necessary that he should have shown substantial performance of his contract. § 67-601, OCLA; *Edmunds v. Welling,* 57 Or 103, 106, 110 P 533; *Pippy v. Winslow,* 62 Or 219, 222, 223, 125 P 298. Notwithstanding his failure in that respect, however, he might have been entitled upon the common counts to a judgment for the reasonable value of that portion of his labor and materials from which defendant derived a benefit and which it was not necessary to have redone. 58 Am Jur, Work and Labor, § 40, note 9; *Steeples v. Newton,* 7 Or 110, 113, 33 Am Rep 705.

"*· * * We think it is manifest that § 9-102, O. C. L. A., prohibits the dismissal of a suit on account of a plaintiff's inability to establish an alleged lien if the complaint, in addition to averring the lien and praying for its foreclosure, states a good cause of action for labor performed or materials supplied. If the sum for which judgment is sought is free from dispute, judgment for that amount may be entered even though the plaintiff fails to prove his lien or the court holds it invalid. If the value of the labor or materials was in controversy but the defendant waived trial by jury, the court may enter judgment for the proper amount. If trial by jury was not waived and the value of the labor or materials was controverted, the cause should be transferred to the law side of the court." *Ward v. Town Tavern,* 191, Or. 1, 228 P2d 216, 230.

■■ In the case at bar, however, liability for the items of labor and materials in question was disputed

by a counterclaim by defendant for damages for loss of use of the tractor for a period of six days during which the valueless portion of plaintiff's work was being redone. There was competent proof of damages in that respect in an amount greater than the conceded reasonable value of that part of plaintiff's work and materials for which judgment might have been entered. Cf. *Hoskins v. Scott,* 52 Or 271, 279, 96 P 1112; *Stubblefield v. Montgomery Ward & Co.,* 163 Or 432, 448, 96 P2d 774, 98 P2d 14, 125 ALR 1228. The trial court, although finding generally for defendant, made no specific finding upon the question of damages. If either party was entitled to trial by jury, the privilege was waived by the submission of the cause to the equitable forum by both parties without objection. *Ward v. Town Tavern,* supra, 31 Am Jur, Jury, § 46, note 14. Under the circumstances, the bill of exceptions having included a tranescript of all the evidence, we have considered it, and are of the opinion that the defendant proved that he suffered damages in an amount more than sufficient to offset the reasonable value of that portion of plaintiff's work and materials for which he might otherwise have been entitled to judgment.

■ Plaintiff asserts that defendant, upon completion of the work, and with full knowledge that the machine would not operate satisfactorily, objected to plaintiff's bill only with respect to the amount thereof, and that he should not now be heard to assert new and different objections. There was testimony, however, that, at the time when defendant protested against the amount of the bill, he also told plaintiff that the tractor did not operate properly. He raised the same contention in his answer herein. Plaintiff pleaded that he had fully performed his contract. Defendant answered that plaintiff had failed to follow instructions; that he had done the

work in an unskilled and improper manner; and that it was of no value to defendant and had to be redone. The reply was a mere general denial. Plaintiff cannot plead full performance of his contract and, on trial, rely upon a waiver of full performance. *McMillan v. Montgomery,* 121 Or 28, 33, 253 P 879; *Shannon v. Portland,* 38 Or 382, 394, 62 P 50.

Our conclusion is that the decree was proper, and it is affirmed, with costs.