Argued February 24, reversed March 8, 1927.

# WILLIAM I. McMILLAN *v.* C. E. MONTGOMERY

## ET AL.

### (253 Pac. 879.)

**Bills and Notes—Letter to Indorsee's Wife from Indorsers' Attorney Held not Express Waiver, nor Evidence of Implied Waiver, of Notice of Dishonor (Or. L., § 7901).**

1.   Letter from indorsers' attorney to indorsee's wife, stating that indorser suggested that indorsee send note to writer, with instructions to sue thereon if he found anything to attach and was sure that maker could take care of note if he wished, *held* not an express waiver, nor evidence of implied waiver, of notice of dishonor, within Section 7901, Or. L.

**Bills and Notes—Waiver of Notice of Dishonor will not be Implied, Unless Indorser's Conduct Prejudicially Misled Indorsee into Honest Belief That Waiver was Intended.**

2.   Waiver of notice of dishonor by indorser of note will not be presumed or implied, contrary to his intent, unless his conduct misled indorsee, to latter's prejudice, into honest belief that such waiver was intended or consented to.

**Bills and Notes—Indorsee Alleging Notice of Dishonor of Note cannot Recover from Indorsers Under Proof of Waiver Thereof (Or. L., § 7901).**

3.   Indorsee, whose complaint, in action against indorsers, expressly alleged presentment, nonpayment, and notice of dishonor of note sued on, and alleged no waiver of such notice under Section 7901, Or. L., cannot recover under proof of such waiver.

**Contracts—Plaintiff Pleading Performance of Condition Precedent cannot Recover Under Proof of Waiver Thereof.**

4.   Plaintiff cannot plead performance of condition precedent and recover under proof of waiver of such performance.

**Trial—Court Trying Law Action Without Jury must Make Fact Findings on Every Material Issue, but cannot Base Judgment on Finding of Facts not in Issue.**

5.   It is duty of court trying law actions without jury's aid to make fact findings covering every material issue in case, but it is not within court's province to go outside issues made by pleadings and inquire concerning and base judgment on finding of facts not in issue.

---

2.   See 27 R. C. L. 909.
5.   See 26 R. C. L. 1089.

**Bills and Notes—Finding That Indorsers were Given Written Notice of Dishonor of Note Held not Sustained by Evidence (Or. L., § 7888).**

6. Evidence *held* not to sustain finding that written notice of dishonor, under Section 7888, Or. L., was given to indorsers sued on note.

**Evidence—Evidence of Custom or Habit to Do Particular Act in Like Cases is Admissible, Where Evidence Whether It was Done on Particular Occasion is Conflicting.**

7. Where evidence as to whether specific act was done on particular occasion is conflicting, testimony as to custom or habit of same persons to do such act in like cases is admissible as tending to prove that it was done on such occasion.

**Evidence—Evidence of Bank's Custom to Give Notice of Dishonor Held not Substantive Evidence That Such Notice was Given Indorsers on Particular Occasion (Or. L., § 7901).**

8. In absence of testimony that indorsers, sued on note, were given notice of dishonor, under Section 7901, Or. L., evidence of bank's custom to give such notice on like occasions was insufficient to prove that it was given, and was not substantive evidence of such fact.

---

Bills and Notes, 8 **C. J.**, p. 668, n. 22, p. 696, n. 55, p. 700, n. 8, p. 701, n. 11, p. 1055, n. 79, p. 1056, n. 81.
Contracts, 13 **C. J.**, p. 731, n. 83, 84, p. 754, n. 22.
Evidence, 22 **C. J.**, p. 749, n. 66, p. 750, n. 69, 71.
Trial, 38 **Cyc.**, p. 1954, n. 16, p. 1970, n. 5, 6.
Waiver, 40 **Cyc.**, p. 266, n. 31 New, p. 269, n. 49.

From Multnomah: J. M. BATCHELDER, Judge.

Department 1.

REVERSED.

For appellant there was a brief over the names of *Mr. A. E. Clark* and *Mr. Walter G. Hayes,* with an oral argument by *Mr. Hayes.*

For respondent there was a brief over the names of *Mr. P. C. Kibbee* and *Messrs. Reeder & Eastham,* with an oral argument by *Mr. O. W. Eastham.*

RAND, J.—This is an action on a negotiable promissory note executed by the defendant Jones on

---

7. See 10 R. C. L. 955.

December 26, 1921, and payable one year after date without grace to the order of defendants C. E. Montgomery and Loretta Montgomery. By its terms the note was made payable at Portland, Oregon, but no particular place within the city was specified as the place of payment. The note was negotiated before maturity by the Montgomerys, who transferred it to plaintiff by indorsement and delivery. Plaintiff purchased the note in good faith and for value, and is now the holder thereof in due course. He delivered the note before maturity to the Canadian Bank of Commerce, a banking corporation of Portland, Oregon, for collection, and that bank had it in its custody for that purpose at the time of its maturity. All of the defendants at said time were residents of the City of Portland. There is no waiver of any kind embodied in the note, and in transferring the note, the Montgomerys, as payee, indorsed their names on the back thereof in blank. The note was executed in payment of the purchase price of property, and not for the accommodation of the Montgomerys. Plaintiff brought this action against the maker and both indorsers, alleging in his complaint that on the twenty-sixth day of December, 1922, the date when the note matured, the note was presented to the maker for payment and payment thereof demanded and refused, and notice of dishonor given to each of said indorsers. These facts were denied by the answer. The cause was tried in the Circuit Court without the intervention of a jury, and by its findings the court found that the note was presented to Jones for payment and that payment thereof was refused and notice. of dishonor given to the Montgomerys, and although there was no allegation in the pleadings of any waiver by the indorsers of their right to notice before lia-

bility could attach as to them, the court found that the Montgomerys had waived the right to notice, and based upon said findings, entered a judgment against all of the defendants for the amount of the note, and from this judgment the Montgomerys, who will be hereinafter referred to as the indorsers, have appealed.

1, 2. The indorsers contend that the whole evidence shows that the note was never presented to the maker for payment and that no notice of dishonor was ever given to the indorsers or either of them, and that by reason thereof they are discharged from any liability upon the note. Before considering this contention, it is necessary to consider and dispose of the court's finding upon the question of waiver. The only evidence and all of the evidence which it is claimed was the basis of the court's finding of waiver by the indorsers is the contents of the following letter written by the attorney of the indorsers to the wife of the plaintiff:

"May 2, 1923.

"Nora McMillan,
     "P. O. Box 80,
          "McClary, Washington.

"Dear Madam: Mr. Montgomery of this city, handed me your letter of April 24th regarding note you hold against F. W. Jones. Mr. Montgomery says that Mr. Jones is able to pay this note, but you may have to use some persuasive remedy. Mr. Montgomery also suggests that if you will send the note to me with instructions to sue thereon, provided I find something that can be levied upon. Mr. Montgomery says that Jones has three automobiles and has recently made an application for some business here and he is sure that he can take care of this note if he wants to; so if you desire, please forward the note to me and I will make a careful investigation

and if I find anything that can be attached, I will advise you to allow me to proceed.

"Yours very truly,
"Walter G. Hayes."

The evidence shows that the bank, after failing to make collection of the note, returned it to plaintiff in March, 1923, and that immediately following its receipt, plaintiff's wife wrote a letter to Jones in respect to the overdue note and upon receiving a reply from him, then wrote to the indorsers and that the letter in question was written to her in response to her letter.

Section 7901, Or. L., which is a part of the Negotiable Instruments Act, provides that "notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be express or implied."

The letter referred to contains no express agreement that in the absence of notice to them, the indorsers will pay the note in question or are to be liable for its payment, nor does it contain any statement that the indorsers have waived or intend to waive plaintiff's failure to give notice of the dishonor of the note and hence does not constitute an express waiver within the meaning of the statute. In 27 R. C. L., page 909, the rule applicable to an implied waiver is stated as follows: "In the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party

showing such a purpose or acts amounting to an estoppel on his part.'' There is nothing contained in this letter which in any way could have misled the plaintiff, to his prejudice, or which could have led him to believe that the indorsers intended or consented to any waiver of any right upon their part. The letter does not even refer to a waiver or in any way recognize any obligation or duty upon the part of the indorsers to pay the note, nor does it in any way refer to any liability upon their part. Hence, the letter is not evidence in any sense of an implied waiver.

3, 4. For another reason this finding cannot be sustained. As stated, the complaint expressly alleges the fact of presentment, nonpayment and notice of dishonor, and plaintiff brought this action to enforce the alleged liability of the indorsers which would exist if those facts were true, and no allegation of the waiver was contained in the pleadings. Whatever may be the rule in other jurisdictions, it is well settled in this state that a plaintiff cannot plead performance of a condition precedent and recover under proof of a waiver of such performance: *Long Creek Building Assn.* v. *State Ins. Co.,* 29 Or. 569 (46 Pac. 366). That the above rule is applicable in the instant case is established by *Robinson* v. *Holmes,* 57 Or. 5 (109 Pac. 755); *First Nat. Bank* v. *Bach,* 98 Or. 332, 339 (193 Pac. 1041); *Case* v. *McKinnis,* 107 Or. 223, 244 (213 Pac. 422, 32 A. L. R. 167).

In the last case cited this court, speaking through Mr. Justice Harris, said:

''The holder in order to recover from an indorser must by a proper pleading allege and by sufficient evidence prove that he presented the instrument for payment and gave notice of dishonor at the time and

121 Or.—3

place prescribed by the statute; or if delayed he must allege and prove sufficient excuse for the delay; or if presentment is not made or notice is not given because of a waiver, the holder ought to allege and prove such waiver.''

5. It is the duty of the court when trying law actions without the aid of a jury to make findings of fact covering every material issue in the case, but it is not within the province of the court to go outside of the issues made by the pleadings and to inquire concerning facts not in issue and base its judgment on a finding of facts not in issue.

6. We find no evidence to sustain the finding that notice of dishonor was given to the indorsers. They both resided in the City of Portland, and from a notation in lead pencil on the back of the note their address was known to the bank. They both testified positively that they received no notice by mail or otherwise. The only evidence which in any way tended to dispute their testimony was that of Robert John Beatty, who testified that he was an accountant at the Canadian Bank of Commerce, and was in charge of and responsible for the records of the bank; that he had examined the records pertaining to the note in question; that the records show that the note was received by the bank for collection on June 16, 1922; that on December 26, 1922, the bank wrote a letter to Jones, retaining a copy thereof, which stated: ''We beg to advise that your note for $1456.00 with interest amounting to $101.92 in favor of C. E. and L. Montgomery was due today and has not been paid. We shall be glad if you will kindly give this matter your immediate attention.'' He further testified as follows:

"The Court: At the time when it came due, December 26, 1922, what did you do?

"The Witness: I cannot say what we did. All I can say is our practice. We have a great many of these notes; when we present the note we don't have documentary evidence to the effect we have presented it. We merely present it; if it is not paid, in case of a note of this size, we would write to the maker that it is past due, especially if we couldn't find the man at the place.

"The Court: If that custom had been followed, then, the Montgomerys would have been notified?

"The Witness: Yes, sir.

"The Court: In the event it was not paid, then you would notify the maker F. W. Jones?

"The Witness: Yes, sir.

"The Court: That is assuming this note was treated the same as is your custom to treat cases of this sort?

"The Witness: Yes, sir."

Upon cross-examination the witness testified:

"Q. As a matter of fact, you don't know anything about what was done on that date with reference to presenting it to Mr. Jones or notifying the Montgomerys personally? A. No, sir, not personally.

"Q. You have no knowledge of what took place? A. No, sir, no more than any other transaction of, hundreds of transactions every day, going through; we don't personally see them and supervise them, and personally I do not.

"Q. The only thing you are sure was done is that they wrote Mr. Jones a letter the 26th of December, 1922, a copy of which you introduced in evidence? A. That is the only record we have been able to produce.

"Q. You are acquainted with the records in the bank with reference to this note are you? A. Yes, sir.

"Q. You have charge of them? A. Yes, sir.

"Q. Is there any record there that you have not produced here in relation to the collection of this note? A. I have records of the coming in and going out, that I don't think has any bearing.

"Q. I am speaking about the date, 26th of ·December, 1922, the date upon which it fell due. Have you any records other than you have introduced as to what the bank did on that day toward the collection of the note? A. Not showing what was actually done on that day. We have those looseleaf copies, we haven't been able to find.

"Q. No record can be produced except what you have brought here as evidence? A. No, sir.

"Q. As to what you did on the 26th of December, 1922? A. As I already said, Mr. Crow, the collection clerk is on his holidays now; since we got this notice we have not been able to get in touch with him; he is in the woods on a shooting trip; he will be back Monday.

"Q. Is it Mr. Crow's policy when a note is turned over to him, to make a record of the things he does in reference to the collection of it? A. We keep copies of letters.

"Q. If Mr. Crow had done anything else except the evidence you have brought here, you would have it, would you? A. We should have copies of the letters he wrote.

"Q. Do you think anything else was done with reference to the collection of this note except what was done here? A. Yes, sir.

"Q. You have no evidence of it? A. We have no evidence, except the usual practice. We can find no evidence.

"Q. You are not positive of your own. knowledge whether this note was actually presented to Mr. Jones on that day? A. No, sir, except we have a letter showing the note was in our hands for collection and also we have the one letter to Mr. Jones who was the maker, showing we had the note before us on that day, and the letter written to him demanding .

payment which is our essential point. We have been searching for some of the notices sent to the other people; as I said we can't find the copies, but it is our practice to keep copies.

"Q. But you haven't anything here in this case to show you sent any notices to the Montgomerys at all? A. No, sir.

"Q. At any time?

"A. No, we have no notices that we sent to the Montgomerys.

"Q. That one letter is all you ever wrote to Mr. Jones about the note? A. The letter to F. W. Jones?

"Q. Yes, dated December 26, 1922. A. That is the only notice we wrote after the note matured. It is our practice to notify before maturity. We sent notices in these collections before maturity notices; we are not obliged to but we do not keep copies of the notices; it is just to facilitate collection of the items. Sometimes in postcard form, sometime little form notices filling in the amounts in ink.

"The Court: You don't wish me to understand that the bank, when it accepts a note for collection, has a rule of notifying the parties when the note becomes due, yet maintains no record of whether or not they were actually notified? A. No, sir. I mean we keep no record on the first notice, before the note falls due.

"The Court: What I am getting at is, the defense in this case rests upon failure to notify the indorsers of the refusal of the maker to pay at the time stated. * * Now, if your bank, having taken a note for collection, fails to preserve the evidence of these notifications, assuming such is the law, the indorsers then are absolved from liability and your bank takes no steps to see its clients are protected in that regard? A. Yes, sir. We take steps, we notify them.

"By the Court: What evidence have you of that other than it is merely a custom? A. To date we have been unable to find copies of the notices.

"The Court: Then, if you followed your custom you did actually give the notices? A. Yes, sir.

"The Court: And if the notice was actually given you have somewhere copies of this notice? A. Yes, sir. We should have copies of the notices. Thus far we have been unable to locate them."

Under Section 7888, Or. L., notice of dishonor may be in writing or merely oral. In the instant case there was not the slightest pretense by anyone that any notice of dishonor was given orally and the case was tried wholly on the theory that the notice was in writing. The only testimony having any connection with the giving of notice to the indorsers was that offered by Mr. Beatty, and which has been copied above. Nothing said by him referred to anything done by himself, with the one exception that he was in charge of and responsible for the safekeeping of the records of the bank. His testimony was to the effect that it was the invariable custom and practice of the bank to notify all indorsers of notes where they had been presented and dishonored by nonpayment. In so testifying, he was referring not to any custom or practice of his own, and had no personal knowledge of what was done in the particular transaction involved here. According to his testimony, if the bank had given notice in the instant case, there would have been a copy of such notice in the possession of the bank. The fact that no such copy existed was evidence of the fact that no notice was given and corroborated the indorsers' testimony that they received *no notice.*

7. The general rule on this subject is laid down in Lawson on Usages and Customs, Section 46 as follows:

"If the memory of a witness is defective concerning an act which it is of importance to prove as having

occurred at a particular time, or under certain circumstances, it would seem that his custom to do that act at the time or under the circumstances alleged should be of weight in raising an inference that the act was then performed, and evidence of the habit ought therefore to be allowed.''

Professor Greenleaf in 1 Greenl. on Ev., 16th ed., Section 14j, says:

''A habit of doing a thing is naturally of probative value as indicating that on a particular occasion the thing was done as usual, and, if clearly shown as a definite course of action, is constantly admitted in evidence.''

8. Where there is conflicting evidence as to whether a specific act was done on a particular occasion, there being direct evidence that the act was done and other evidence that it was not done, testimony that it was the custom or habit of the same person or persons to do the act in other like cases is admissible as tending to prove that the same act was done by them on the occasion in question: *State* v. *Railroad Co.*, 52 N. H. 528, 532; *Mathias* v. *O'Neill*, 94 Mo. 527 (6 S. W. 253), and other cases cited in 1 Greenl. on Ev., § 14j. But there was no testimony in this case upon the part of any person that the act of giving notice to the indorsers was performed, and hence there was no evidence which was or could be supported or corroborated by the custom of the bank to give a similar notice upon other like occasions. Standing alone, evidence of the custom of the bank was insufficient to prove the fact that notice was given and was not substantive evidence of that fact, and from this it follows that there was no evidence to sustain the court's finding that notice had been duly given to the indorsers.

For these reasons the judgment against C. E. Montgomery and Loretta Montgomery must be reversed and the cause will be remanded, with directions to dismiss the action as to them.

REVERSED AND REMANDED.

McBRIDE, J., and COSHOW, and BEAN, JJ., concur.