Argued February 6, affirmed April 2, 1973

SPEARS, *Appellant, v.* HUDDLESTON ET UX,
*Respondents.*

508 P2d 438

*Raymond J. Salisbury,* Grants Pass, argued the cause for appellant. On the briefs were Schultz, Salisbury & Cauble, Grants Pass.

*William H. Ferguson,* Medford, argued the cause for respondents. With him on the brief were Grant and Ferguson, Medford.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

TONGUE, J.

This is an action on a promissory note to collect an alleged balance of $1,543.71, in which defendants filed a counterclaim to recover the amount of an alleged overpayment of $3,706.56. The note was secured by a chattel mortgage on certain trucks and trailers which were later repossessed and sold by plaintiff.

Defendants' counterclaim alleged that plaintiff repossessed one of the trucks and trailers on January 11, 1966, but did not sell them until "on or about January of 1969"; that "by reason of said repossession and sale the Plaintiff did not act as required by the terms of the Uniform Commercial Code" (ORS 79.5040 and 79.5070), and that "after allowance of all proper credits and charges, the Plaintiff has been overpaid by the Defendants in the sum of $3,706.56."

The case was tried before a jury. Plaintiff appeals from a verdict and judgment in favor of defendants on their counterclaim in the sum of $899.83. We affirm.

The facts are not complicated. On January 15, 1965, defendants executed a promissory note to a bank for $12,979.44, secured by a chattel mortgage on a 1957 Chevrolet pickup truck, a 1954 Autocar truck and two trailers. Defendants became delinquent in their payments. Plaintiff had guaranteed payment of the note. On January 11, 1966, upon payment by plaintiff of the balance then due, the bank endorsed the note to plaintiff without recourse and also assigned to him

the chattel mortgage. At that time the balance payable by defendants to plaintiff was the sum of $11,181.74.

In January, 1966, plaintiff made an agreement under which defendants gave him a separate contract to pay $600 for the pickup truck and then repossessed the Autocar truck and the two trailers. By letter dated January 26, 1966, plaintiff informed defendants of his intention to sell this equipment on private sale on or after February 10, 1966. He testified that defendants promised to produce a buyer, but did not do so.

Plaintiff claimed to have advertised the equipment for sale in various publications, along with other equipment which he had for sale. Because plaintiff was unable to produce copies of such advertisements at the time of trial, the exact nature and extent of such advertising, as well as the prices for which the equipment was advertised, do not appear. In August, 1966, however, plaintiff sold one trailer for $2,750.

By letter dated October 15, 1966, plaintiff sent defendants another letter stating his intention to sell the remaining equipment at auction. As of that date the balance on the account was $8,162.34. He did not sell the equipment, however, until two years later, on October 14, 1968, when he sold the truck and the remaining trailer for $9,700. Meanwhile, plaintiff also sold a pump for $142.50 and rented some of the equipment for $195, making a total of $13,387.50 received by him as a result of the repossession (including the $600 contract for resale of the pickup truck to defendants).

During that period, however, charges for interest, repairs and other items continued to accrue, resulting in a balance as of October 14, 1968, in the sum

of $11,243.71 prior to the sale of that truck and trailer and a remaining balance in the sum of $1,543.71 after that sale.

Defendants testified that after receiving plaintiff's letter of October 14, 1966, they heard nothing further from plaintiff for over two years and had assumed that the equipment had been sold. Defendant M. A. Huddleston expressed the opinion that in 1966 the truck and trailer was worth $10,000. Defendants also called as a witness a truck dealer who testified the normal practice on the repossession of such equipment was usually to resell it in from 30 to 60 days; that to his recollection plaintiff contacted him about the sale of the truck and trailer and was "asking" $14,000 for them, and that on that basis the truck and trailer was overpriced for a quick sale.

Plaintiff denied that he asked such a price. He also called as a witness a truck dealer who testified that the age and nature of the truck and trailer made them difficult to sell; that their retail value was $7,500; that the price of $9,700 was "very high"; that such equipment should be sold "within a two year period at the most" and that the average period for the resale of used trucks was six months as a "feasible average" for "usual commercial practice," with "half over and half under." He also testified that it would have been hard to sell the truck and trailer for $14,000.

Plaintiff's total experience in repossessions and sales of repossessed equipment was limited to two other repossessions.

The Uniform Commercial Code, as adopted in Oregon, includes the following provisions:

"ORS 79.5040 Secured party's right to dispose of collateral after default; * * *

"(3) * * * [s]ale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. * * *

"ORS 79.5070 Secured party's liability for failure to comply with ORS 79.5010 to 79.5070.

"(1) * * * If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of ORS 79.5010 to 79.5070. * * *

"(2) * * * If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. * * *"

ORS 79.5040 (2) also provides as follows:

"If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. * * *"

Plaintiff does not contend on this appeal that the evidence was insufficient to support a verdict in favor of defendants on their counterclaim under ORS 79.5040 and 79.5070, but contends: (1) that defendants' counterclaim did not state facts sufficient to constitute a cause of action, and (2) that the court did not properly instruct the jury regarding the manner in which a creditor holding personal property as col-

lateral may dispose of it under ORS 79.5040 and 79.5070.

1. *Defendants' counterclaim was sufficient after the verdict and in the absence of a demurrer.*

Plaintiff contends that the trial court erred in denying his motion at the conclusion of the testimony to withdraw defendants' counterclaim from the jury on the ground that it failed to allege sufficient facts to constitute a cause of action.

Plaintiff had previously filed no demurrer to defendants' counterclaim, made no objections on the record to evidence offered by defendants in support of their counterclaim on the ground that it was an insufficient pleading, and made no motion for nonsuit or directed verdict on the counterclaim on the ground that defendants' evidence was insufficient to support a verdict on their counterclaim, as the jury then proceeded to do.

■ In determining the sufficiency of the allegations of the counterclaim under these circumstances we start, of course, with the familiar rule that in the absence of a demurrer a pleading is to be liberally construed. In this case, however, the additional rule of "aider by verdict" is also involved.

■ The rule of "aider by verdict" as stated in *Booth v. Moody,* 30 Or 222, 225, 46 P 884 (1896), was again approved in *Todd v. Occidental Life Ins. Co.,* 208 Or 634, 655-56, 295 P2d 870, 303 P2d 492 (1956), as cited by both parties in this case. That rule, as approved in *Todd,* is as follows:

"'* * * [t]he extent and principle of the rule of aider by verdict is that *whenever the complaint contains terms sufficiently general to comprehend*

*a matter so essential and necessary to be proved
that, had it not been given in evidence, the jury
could not have found the verdict, the want of a
statement of such matter in express terms will be
cured by the verdict, because evidence of the fact
would be the same whether the allegation of the
complaint is complete or imperfect.* But if a ma-
terial allegation going to the gist of the action is
wholly omitted, it cannot be presumed that any evi-
dence in reference to it was offered or allowed on
the trial, and hence the pleading is not aided by
the verdict. The rule in such cases, as laid down
by Mr. Proffatt in his work on Jury Trials, and
which seems to have been adopted by this court in
Houghton v. Beck, 9 Or 325, is that "a defect in
pleading, whether of substance of form, which
would have been fatal on demurrer, is cured by ver-
dict, if the issue joined be such as necessarily re-
quired on the trial proof of the facts defectively
stated or omitted, without which it is not to be
presumed that either the judge would direct the
jury to give, or that the jury would have given, the
verdict": Proffatt on Jury Trials, § 419.' " (Em-
phasis added)

To the same effect, we held more recently in
*Fulton Ins. Co. v. White Motor Corp.*, 261 Or 206,
220, 493 P2d 138 (1972), that although the rule
of "aider by verdict" may not be applied to a
complaint which affirmatively shows on its face that
if all of its allegations are true plaintiff has no cause
of action, that the rule may nevertheless apply to a
complaint which fails to state a cause of action be-
cause it omits some necessary allegations which, if
added, would not be inconsistent with the facts already
alleged. See also Clark on Code Pleading (2d ed 1947)
736, § 119.

Plaintiff points out that in *Todd* we held (at 656-58)
that the pleading in that case was not sufficient, even

as "aided by the verdict." That case involved an action on an insurance policy which provided several types of coverage. The complaint attempted to allege facts sufficient to bring plaintiff within one type of coverage. The trial court, however, entered judgment based upon another type of coverage, as to which *no* facts were pleaded. Thus, the court properly held in *Todd* (at 658) that such a finding would not stand because "it lay *beyond* the issues raised by the pleadings" and that recovery under each type of coverage involved a separate cause of action. *McMillan v. Montgomery et al,* 121 Or 28, 253 P 879 (1927), also cited by plaintiff, is to the same effect, the court referring in that case (at 34) to findings relating to an issue "outside of the issues made by the pleadings" and to "facts not in issue."

█ In this case, on the contrary, the essence of the facts alleged in defendants' counterclaim was that it was the long delay in selling the repossessed truck and trailer which resulted in the violation of U.C.C. requirements—those requirements being that "* * * every aspect of the disposition including the method, manner, *time,* place and terms must be commercially reasonable" (ORS 79.5040 (3)) and that a secured party may be liable to the debtor for any loss caused by a failure to comply with the provisions of ORS 79.5040 (ORS 79.5070 (1)).

We agree that defendants' counterclaim fails to allege facts sufficient to show how the two-year delay in the sale of the repossessed truck and trailer resulted in a loss to the defendants, with the result that it was vulnerable to a demurrer. For the purposes of applying the rule of "aider by verdict," however, this case is not comparable to *Todd* in that evidence was offered

on trial from which the jury could have found that plaintiff failed to dispose of the repossessed truck and trailer within a commercially reasonable time, but held them for sale at an unrealistically high price, and that defendants suffered a loss as a result.

Again, it must be remembered that plaintiff does not contend on this appeal that the evidence was insufficient to support such a verdict. Thus, the question to be decided in applying the rule of "aider by verdict" is whether such evidence was "necessarily required on the trial on proof of the facts defectively stated or omitted" or whether such evidence was "beyond" or "outside" the issues raised by the allegations of defendants' counterclaims. We hold that although the counterclaim would have been insufficient on demurrer, it sufficiently raised the issue of unreasonable delay in the sale of repossessed goods, contrary to the requirements of ORS 79.5040 and 79.5070 to the extent that the evidence offered on trial relating to that delay and its consequences were "necessarily required" on trial under the allegations of the counterclaim and were not "beyond" or "outside" the scope of that issue. It follows that plaintiff's first assignment of error must be rejected upon application of the rule of "aider by verdict."

A further reason which leads us to this same result is that plaintiff could not properly claim unfair surprise or prejudice in this case because the counterclaim put plaintiff on notice of defendants' contention that their primary complaint involved the long delay in the sale of the repossessed goods.

■ Thus, in *Fulton Ins. Co. v. White Motor Corp.*, *supra* (at 218), we recently quoted with approval

what we referred to as a "liberal rule" that "\* \* \* a case will not be reversed if it has been fully and fairly tried and no prejudice resulted from a material omission in the pleadings."① We also pointed out in *Fulton* (at 219) that "[o]ur own statutes and Constitution direct us that cases, once litigated, are not to be reversed unless substantial rights have been affected. ORS 19.125(2); Oregon Cons. Article VII (Amended) § 3."

■ In *Fulton* we held (at 219) that where a defect in a pleading, even though material, consists of an omission to state a necessary fact and it appears that the necessary fact could have been added by amendment, the entire record will be examined when the pleading is attacked for the first time on appeal. From the standpoint of surprise or prejudice, however, we fail to see any basis for distinction between a party who waits until appeal before attacking the sufficiency of a pleading and a party who does not challenge the sufficiency of a pleading by demurrer or objection to evidence, but waits until all of the evi-

---

① In *Fulton* we quoted (at 218-219) as follows from Claughton v. Johnson, 47 Wyo 536, 41 P2d 527, 530 (1935):

"'\* \* \* In all of these cases which hold to the more liberal rule, the ultimate criterion as to whether a case should be reversed on account of defects or deficiency in the pleadings is, as to whether or not the complaining party has been prejudiced, or his substantial rights have been affected, and all other rules relating to the same subject are held to be subordinate thereto. They evidently proceed on the theory that— assuming that the court has jurisdiction—pleadings are but a means to an end and not an end in itself, and that, while parties are entitled to know the claims of their adversary, no clause [sic] of complaint exists when that purpose has in any manner been subserved, and when no prejudice results from lack of allegations, provided, of course, that a cause of action exists in fact and has been shown; \* \* \*.'"

See also Marsh v. Walters, 242 Or 210, 214, 408 P2d 929 (1965).

dence is in and both sides have rested before challenging the sufficiency of the pleading. We therefore hold that such a party stands in the same position as one who attacks the sufficiency of the pleading for the first time on appeal, insofar as the question of surprise or prejudice is concerned. Cf. *Nicholson v. Jones,* 194 Or 406, 410, 242 P2d 582 (1952).

We thus turn to the application of these rules to the facts of this case. As previously stated, plaintiff did not demur to defendants' counterclaim and did not object to evidence offered by defendants in support of it. Furthermore, at the beginning of this trial defendants offered an amended counterclaim, pleaded in more detail, and at the conclusion of the trial offered another amended pleading "to conform to the proof." Meanwhile, defendants offered the testimony of several witnesses in support of their counterclaim and plaintiff not only cross-examined these witnesses, but offered testimony to the contrary. The court then gave instructions as requested by both parties on the issue raised by the counterclaim.

The amended pleadings may have been tardily offered and may also have been defective in pleading the detailed evidence. Under these circumstances, however, plaintiff is hardly in a position to urge that he suffered any substantial prejudice as a result of the refusal of the trial judge to withdraw the counterclaim from the jury because of insufficiency in the facts alleged in that counterclaim. Therefore, as in *Fulton* (at 219) we will "* * * treat the case as though the question had been raised at the proper time and the pleadings amended accordingly. * * *"

2. *The instructions on the Uniform Commercial Code, taken as a whole, were not erroneous in any manner prejudicial to plaintiff.*

Plaintiff assigns as error the giving of the following instruction:

"The Defendants in this case contend that the Plaintiff, K. A. Spears, did not dispose of the collateral in a commercially reasonable manner.

"A commercially reasonable manner is a manner which will result in the secured party selling the secured goods in the usual manner in any recognized market at the current and best price reasonably obtainable in such market to produce the maximum amount from the sale of the security and in accordance with reasonable custom and commercial practices among dealers in the same or similar types of property sold. He must act in good faith, avoid loss, make an effective realization on the goods sold, sell in the usual manner in a recognized market at the current price, and sell in conformity with reasonable commercial practices among dealers in the type of property sold." (Tr 253-254)

Plaintiff excepted to that instruction on the ground that "there is no evidence in the case involving a recognized market, and that particular instruction is not applicable and therefore can be misleading."

The trial court instructed the jury at length on the Uniform Commercial Code in instructions extending for approximately four pages, including lengthy quotations from the statute itself. Conceding, however, that there may have been "no evidence in the case involving a recognized market" and that the instruction on this particular subject may have been incorrect, neither was there any issue or contention that this truck and trailer were not sold in "a recognized market." The basic contention by defendants was not

that plaintiff did not sell the goods in a "recognized market," but that he delayed for an unreasonable time in making such a sale. Plaintiff makes no contention that the jury was not properly instructed on that issue, on which the court instructed, without objection, as follows:

"The law provides that the collateral may be disposed of at a private sale and may be made by way of one or more contracts, and the disposition of the collateral may be as a unit or in parcel, and sold at any time and place and upon any terms, but every aspect of the disposition, including the method, manner, time, place and terms, must be commercially reasonable.

"The fact that a better price could have been obtained by a sale at a different time or in a different method than that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor, or if he sells at a price current in such market at the time of his sale, or if he has otherwise sold in conformity with the reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner."

■ After reviewing the instructions as a whole, in the light of the issues raised by the pleadings and contentions made by the parties, as well as the evidence offered by the parties, we hold that the instructions on the Uniform Commercial Code were not erroneous in any manner or respect which was prejudicial to the plaintiff on the point raised by his exception. In so holding, however, we do not necessarily approve all of such instructions as correct statements of the application and effect of the U.C.C.

Holding, as we do, that plaintiff's two assignments of error have no merit, we must affirm the judgment of the trial court.