L. A. SEELMAN, Appellee, v. FARMERS' CO-OPERATIVE COMPANY, Appellant.

MASTER AND SERVANT: The Relation—Wrongful Discharge—
1 Evidence—Pleading. Evidence tending to show a cause for the discharge of a servant is wholly inadmissible when there exists no basis in the pleading for such evidence, and when, if there was such basis, no attempt is made to show that the servant was responsible for such cause.

MASTER AND SERVANT: The Relation—Wrongful Discharge—
2 Non-Moving Cause. A wrongful discharge of a servant may not be justified by establishing a fact which in no manner was the moving cause of the discharge.

*Appeal from Worth District Court.*—M. F. EDWARDS, Judge.

DECEMBER 11, 1917.

ACTION at law to recover upon contract of employment. Verdict and judgment for plaintiff, and defendant appeals. —*Affirmed*.

*M. H. Kepler,* for appellant.

*Dunn & Bryant,* for appellee.

WEAVER, J.—The plaintiff alleges that on or about August 1, 1914, he entered into a written contract of employment with the defendant, the terms of which contract are stated therein as follows:

"Contract between Farmers Co-operative Co. and L. A. Seelman.

"The party of the first part agrees to pay to the party of the second part $110 (One hundred ten dollars) per month, for one year beginning August 1, 1914, as manager of their elevator at Northwood, or as long as he gives satisfaction. The party of the second part agrees to manage their business to his best ability, and keep accurate account of all business done by him and to render a statement or report every three months.

"Party of the second part—L. A. Seelman.

"Party of the first part—Otto Buth, Ed. Swensrud."

He further alleges that in pursuance of such contract he entered upon such employment and continued therein until the 5th day of November, 1914, when defendant leased its elevator which plaintiff was employed to manage, and wrongfully discharged him from their service. He further alleges that under his said contract he was entitled to continuous employment in said capacity at $110 per month until August 1, 1915; that after his said discharge, though he made reasonable effort to obtain other employment, he failed to do so until May 1, 1915, when he secured a place for the remainder of the term at the rate of $100 per month.

He asks judgment for the damages thus sustained in the aggregate sum of $671.65.

Answering the petition, defendant admits making the written contract therein mentioned, but avers that such writing does not contain the entire agreement between the parties. It alleges that such contract was made upon the express oral agreement that plaintiff should give to defendant a bond, with approved sureties, in the amount of $5,000 for the faithful performance of his duties, and that the contract might be terminated at any time by the defendant. It is further alleged that the defendant is a corporation, the by-laws of which require that the manager of its elevator shall give bond acceptable to its board of directors, but plaintiff wholly neglected and failed to comply with such requirement, although he orally promised so to do as an inducement to the making of the contract sued upon. In another count of the answer it is alleged that, after the making of said contract, "the plaintiff failed to give satisfaction to the defendant, and the services of the plaintiff rendered to defendant were not satisfactory." By way of counterclaim defendant further alleges that, while in its employment, plaintiff took and converted to his own use, of the property of the defendant, $10 in money and 10 tons of coal of the value of $90, for all of which it asks judgment.

Upon a trial of these issues to the jury, there was a verdict for plaintiff for $631.65, and from the judgment rendered thereon, the defendant appeals. The number of errors assigned is very large, but of those argued the following are all which require discussion.

I. It is said that the court erred in ruling out the testimony of one of the directors of the company that he could see that the elevator was losing trade, "that most of the trade was going away;" also of another

1. MASTER AND SERVANT: the relation: wrongful discharge: evidence: pleading.

witness that he noticed that the manner and demeanor of the plaintiff in dealing with customers was different from what it had been earlier in his service; and of another that he (the witness) told the board of directors that he "didn't think the business was running exactly right,—we wasn't getting our share of the grain."  As to these complaints there are two sufficient reasons for overruling the assignment of error.  In the first place there is no pleading or answer to which the testimony is relevant.  Under the issues joined, plaintiff was not bound to prove that his services were satisfactory to the defendant.  If the defendant desired to defend on the theory that plaintiff had in some manner given defendant reasonable ground for dissatisfaction with his services, and that for such reason it had terminated the contract of employment, that fact would constitute an affirmative defense which, to be of any avail, should be pleaded.  A mere statement that plaintiff did not give satisfaction, or that his services were not satisfactory, is not an issuable averment, in the absence of some allegation of the cause of such dissatisfaction.  Nothing of the kind is attempted in the answer.  Again, the offer of evidence that the trade was falling off, or was becoming unprofitable, would be entirely immaterial upon this question unless plaintiff proposed further to show that such decrease in business or profits was in some manner due to the fault of the plaintiff.  No such offer was made.  A decrease in business could easily happen without any reason therefor chargeable to the manager of the elevator.  Indeed, it appears in the record that shortly before the date of the contract a rival grain buyer had opened business in competition with the defendant, and if this had the effect to divert some of the defendant's trade, it affords no just ground for dissatisfaction with the plaintiff's services.  It may be added also that, when the contract in this case was made, plaintiff had already been in defendant's employment in that capacity

for a year, and it may be presumed that his ability and fitness for the position were already well known to the defendant.

2. Master and servant: the relation: wrongful discharge: nonmoving cause.

II.    Appellant's counsel further argue that defendant is absolved from any claim by plaintiff under the contract because he failed to furnish a bond to secure faithful performance of his services.    The defense is without merit.    Had the giving of the bond been made a condition of his employment, and plaintiff, failing to provide the bond, had been discharged on that account, the plea would be good.    But such is not the record.    Plaintiff had served the defendant in this capacity during the preceding year, and defendant itself had paid for the bond.    When the new contract was made, it appears that for some reason a rebonding in the same company was not found practicable, and plaintiff was asked if he could not procure one, and said he would do so.    There is no competent evidence that the contract of employment was made subject to that condition.    On the contrary, plaintiff entered upon and continued his service under said contract, and was paid his contract wages without objection until defendant put an end to the business by leasing the elevator.    It further appears from the official record of the meeting of the board of directors in October, 1914, that the subject was up for discussion, and it was first voted to call on plaintiff to furnish the bond by November 1; 1914; but, the subject of leasing the elevator having also arisen, the motion was "recalled," and at the same meeting it was voted to make the lease.    The only reasonable explanation for reconsidering or recalling the vote to require the bond is that, the business being closed out by the lease, and the plaintiff's services being no longer required, the matter of a bond became immaterial. When plaintiff was discharged, there was no pretense that it was because of his failure to furnish a bond, nor even that

it was because of unsatisfactory service, the only explanation then given being that the company was going out of business and did not need him any more, except that it wanted him to remain another week in order to complete the books and accounts and to make out a report of the business. Indeed, it is a fair inference, if not the only inference, from the admitted facts, that defendant closed out its business without taking into consideration its liability to plaintiff upon the contract with him, and all of the effort thereafter made to plead the failure to give a bond, and to show dissatisfaction with plaintiff's services, by way of a defense to his action for damages, is the fruit of afterthought. Having kept him in its service under the contract until it had disposed of the business, and then discharged him when it no longer required the service of anybody as a manager of the elevator, it is entirely too late, when sued for damages, to fall back on its reserved right to discharge him for failure to do his work satisfactorily.

III.   Some exceptions have been preserved to the charge of the court to the jury. We have examined the record with reference thereto, and find no error of which the defendant can complain, the charge as a whole being, if anything, more favorable to the defendant than it was entitled to.

Other questions argued are governed by the conclusions already stated, and require no further discussion. The judgment below is—*Affirmed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.