**KENNEY, Plaintiff-Appellee, v. SPICER FURNITURE COMPANY, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 5004.   Decided February 20, 1954.

Thomas W. Maxson, Columbus, for plaintiff-appellee.
Horace S. Kerr, Columbus, for defendant-appellant.

**OPINION**

By HORNBECK, J.

This is an appeal on questions of law from a judgment in favor of the plaintiff and against the defendant, entered upon a verdict of a jury. At the conclusion of plaintiff's case, defendant moved for a directed verdict which was overruled. A motion for new trial was overruled. The verdict of the jury assessed the amount of the recovery due to the plaintiff from the defendant at the sum of "Four thousand two hundred thirty and 81/100 ($4230.81) dollars, plus interest at six per cent, with interest accruing as follows:

| | |
|---|---|
| December 31, 1946, | $ 120.00 |
| December 31, 1947, | 591.86 |
| December 31, 1948, | 719.00 |
| December 31, 1949, | 941.62 |
| December 31, 1950, | 657.32 |
| August 16, 1951, | 1,201.00" |

Nine errors are assigned, four of which relate to the verdict, that it is excessive, against the weight of the evidence, contrary to law, awarded under passion and prejudice; two of the errors relate to instructions to the jury; the fifth, the refusal to give specific charges before argument upon request of defendant; and, eighth, error in the general charge. The sixth and seventh, error in rejecting testimony offered on behalf of the defendant and in receiving testimony on behalf of the plaintiff, to the reception of which objection was made. Ninth, other errors upon the face of the record.

The pleadings of the parties are vital to some of the questions urged on the appeal. The plaintiff alleged that on or about August 20, 1945, under a verbal agreement, he entered the employ of the defendant, to work at its store located at 993 Mt. Vernon Avenue, Columbus, Ohio; that by the terms of that agreement, plaintiff was to be paid $60.00 per week, a minimum bonus of $250.00 per year, the sum of $120.00 per year for insurance, and certain commissions upon all sales made by or through the plaintiff herein; that by the terms of said verbal agreement, it was to continue from year to year with the expressed provision that as long as the plaintiff was connected with the Spicer Furniture Company his salary would, from time to time, be increased. It is alleged that during the year 1945, plaintiff was paid per the verbal agreement; that on April 1, 1946, defendant increased plaintiff's salary to $75.00 per week and paid plaintiff a bonus and commissions for that year, as provided in the oral agreement; but for that year and thereafter, to the date of the filing of the petition, he has failed to pay the $120.00 allowance on insurance as provided in said agreement. It is further averred that on or about December 15, 1947, defendant agreed to increase plaintiff's salary to $125.00 per week and make said increase retroactive to January 1, 1947, and thereafter, in each succeeding year hereinafter

mentioned, the defendant agreed to pay plaintiff a salary of $125.00 per week under the following arrangement: plaintiff to receive partial payment in the amount of $75.00 per week and $50.00 to be retained by the defendant until March or April of the following year, at which time, from the balance due plaintiff, defendant deducted the commissions earned by plaintiff through the year 1947. Plaintiff says that for the year 1947 defendant did refuse and still refuses, as per his oral agreement, to pay the plaintiff the minimum bonus as agreed upon in the amount of $250.00, along with the sum of $120.00 for insurance; that during the year 1948, and the year 1949, the defendant failed and refused to pay this plaintiff the minimum bonus, the insurance, and deducted commissions earned during those years from the earnings plaintiff should have received under the verbal agreement. On January 1, 1950, defendant increased the payments received weekly by plaintiff to $100.00 per week but withheld the balance under the same arrangements as above stated. Plaintiff further says that during the year 1950, defendant paid this plaintiff a bonus but failed and refused to pay the insurance and again deducted commissions earned by plaintiff from the total earnings plaintiff should have received for that year.

Plaintiff says that during the year 1951 the defendant has paid to this plaintiff three thousand five hundred twenty and 13/100 ($3,520.13) dollars, which payments include partial payment on salary under the above arrangement herein stated and the commissions earned by plaintiff herein to the date of August 2, 1951.

Plaintiff says that on August 2, 1951, defendant terminated the services of the plaintiff in violation of his oral agreement. And, although plaintiff has demanded payment of the amount due him under the terms of the verbal agreement, defendant fails and refuses to pay him. Although plaintiff was able and willing to continue his part of said verbal agreement, defendant refuses to let plaintiff do so.

Plaintiff avers that there is due and owing him the sum of six thousand four hundred forty and 96/100 ($6,440.96) dollars, for which, with interest, he prays judgment.

The answer admits the corporate capacity of the defendant, that Charles F. Spicer is president of that corporation, admits a verbal agreement by which the plaintiff was employed by the defendant to work at its store at a salary of $60.00 per week and a bonus of $250.00 per year and the sum of $120.00 for insurance. That this contract was made on or about the 20th day of August, 1945; that the defendant has kept and performed the agreement. It admits that on April 20, 1946, it increased plaintiff's salary to $75.00 per week and that in December, 1947, it increased the plaintiff's salary to $125.00 per week. Further answering, defendant says that the employment of the plaintiff by the defendant was oral, that the plaintiff was employed upon a weekly salary, and at no time employed either by the month or by the year. The defendant generally denies other allegations.

For a second defense, defendant avers that although the plaintiff agreed to devote his time and attention to the interest of the defendant company during business hours, he violated that agreement by absenting himself from defendant's place of business on numerous occasions as much as three hours a day.

For a third defense, the defendant avers that under the agreement, plaintiff was to assist the defendant in building good will for its business; that its customers were to be treated with consideration and courtesy and that plaintiff violated that agreement by insulting defendant's customers and causing them to cease dealing with the defendant. And that because of the conduct as set up in the second defense and the third defense and because of his inefficiency, it became necessary for the defendant to discharge the plaintiff from his weekly employment. The reply is a general denial that plaintiff was employed on a weekly salary, denies the second defense, that he was unnecessarily absent from defendant's place of business and denies the third defense.

Although the plaintiff relies in part upon an original verbal contract which contract is admitted, it develops that upon request of the plaintiff the defendant sent to plaintiff a memorandum of the agreement and its terms. Plaintiff did not at any time suggest any error or omission in the memorandum. Insofar as there is any difference between the averment of the pleadings as to the meaning of the contract and the written statement as to the terms of the contract, the latter must be accepted. This confirmation of the verbal agreement provides for salary as set out in the petition, under paragraph (2) it is further provided:

"In addition to the above weekly salary, the Spicer Furniture Company agrees to pay a minimum bonus of two hundred fifty and no/100 ($250.00) dollars for the year 1945."

At this juncture, it will be observed that this agreement as to the minimum bonus is only specific for the year 1945.

"(3) And due to the fact that Mr. Kenney will suffer a loss of one hundred and twenty and no/100 ($120.00) dollars per year, which amount he will be compelled to pay over and above the low rate extended by group insurance of Ohio Fuel Gas Company, (his former employer), this amount is to be paid at the end of the year in addition to the above mentioned bonus."

"(4) Mr. Kenney is to receive a commission on sales made directly through his personal efforts which includes sales made to relatives, friends, acquaintances, or any other sales made because of Mr. Kenney's being connected with our organization."

The amounts of these commissions are then set out in paragraph 5. Then follows:

"The above proposition is for 1945 but in 1946 and thereafter. as long as F. H. Kenney is connected with the Spicer Furniture Company, it is my desire and intention to increase the income of F. H. Kenney, providing results of his efforts and profits of the Spicer Furniture Company justify an increase or increases."

The terms of this last paragraph could have been observed by the defendant, independent of the payment of any bonus or commissions subsequent to the year 1945, if the amount of income accruing to the plaintiff increased in the years succeeding 1945. The fact that sums were paid to the plaintiff as bonus in any year succeeding 1945 and 1946 does not require the conclusion that they were paid pursuant to the obligation of the confirmatory letter. Bonus normally is a gratuity over and above regular salary. It also clearly appears that for each year

succeeding 1945 the plaintiff did receive an increase in income. Of course plaintiff relies, in the main, on a later oral contract to support his claim for payments over and above his stipulated salary.

There is no controversy as to the salary of $60.00 per week for the year 1945. There is no claim of any money due plaintiff for the year 1945. It is not disputed that on April 1, 1946, plaintiff's salary was increased to $75.00 per week and he was paid that amount during the year and also a bonus and commissions. It is contended, however, that the $120.00 allowance on insurance was not paid for that year. The jury in its verdict allowed that claim. It is evidenct from a check dated February 1, 1947, for the sum of $120.00, payable to plaintiff and indicated to be "reimburse insurance" and endorsed by him, that the insurance was paid for the year 1946, and the jury's verdict to that extent is clearly in error.

Although the books of the defendant do not set up the increase to $125.00 per week until March, 1950, retroactive to January 1, 1950, the defendant does not deny that there was to be an increase to $125.00 per week, effective, not on January 1, 1947, but on January 1, 1948.

Plaintiff testifies that on or about the 15th day of December, 1947, at a luncheon meeting between him and Mr. Spicer of defendant company, he agreed

"that if I would stay, he would increase my salary $50.00 a week and leave the rest of the agreement as it was, as to **commission** and **insurance**."

Continuing, he said:

"Well, at that time, I reminded him that he had never paid me any insurance except for the first year, and that I had not gotten my commission business for 1947, so I told him I just wasn't interested. I did not feel I had been treated fairly and I wasn't interested and, at that point in lieu of my promising to stay on as a satisfactory employee of The Spicer Furniture Company, as a final gesture, he offered to make it $50.00 per week retroactive to January, 1947."

It may be observed that the plaintiff was in error in his statements that he had not received his commissions for 1947 because the record is clear that they had been paid to him periodically throughout the year, and that he had not received his insurance. The plaintiff does not say that when Mr. Spicer agreed to make the $50.00 per week additional retroactive he was to pay anything more than the $50.00 additional. However, from the petition it is evident that the contention is that plaintiff was to receive the $50.00 per week additional retroactive to the first of the year 1947 together with commissions, insurance, and bonus. The testimony of the plaintiff inferentially supports his claim that he was to have commissions and insurance in addition to his salary of $125.00 per week, but there is no proof he also was to have an assured bonus.

Mr. Spicer denies that he agreed to make the increased payment to plaintiff retroactive for the year 1947. He admits that he had a conference with the plaintiff at a luncheon and does not deny that it was at the time fixed by the plaintiff. There is considerable uncertainty in his testimony as found at pages 150-151 of the record because of objections and observations of counsel, but from the bottom of page 151

and a few succeeding pages, it may be said that the defendant, while admitting an increase to $125.00 a week, insisted, as found in his answer at page 152, that the plaintiff was to be paid

"at the rate of one hundred and twenty-five ($125.00) dollars a week, which equals $6,500.00 a year, and it included all other items such as has been paid in the few years previous to that in the way of bonuses, commissions and insurance, this took care of all of Kenney's demands."

"Question: And from that time on, he operated on that basis on in? Answer: Yes, absolutely."

The books are so set up as to show that the defendant did compute the salary upon the basis of increase in weekly payments to plaintiff for the whole of the year 1947. This payment was made early in 1948. Succeeding the conversation of December, 1947, and for the whole of the year 1947 and for the years 1948, 1949, 1950 and 1951, commission payments were made at regular intervals by way of separate checks to plaintiff. No explanation is made by Mr. Spicer or anyone in the employ of defendant company as to the reason for the continuation of these commission payments in the manner shown on the books succeeding the agreement of 1947.

Mr. Spicer testified that the plaintiff was paid every cent due him on the basis that the salary increase was to be in full for the years 1948, 1949, 1950 and 1951. Employees of the defendant company other than Mr. Haggerty had no specific recollection as to the agreement of December, 1947. Mr. Haggerty, general manager of the defendant company, at the store where plaintiff worked, says that after discussing the financial arrangement between Mr. Kenney and Mr. Spicer he made a notation on January 31, 1948, in regard to the salary of Mr. Kenney, as follows:

"Mr. Kenney's total salary to be $6,500.00 which is to include commissions, draw $75.00 a week, balance to be paid at the end of the year."

This testimony was admitted without objection.

The fact which probably weighed the heaviest against the contention of the defendant is the manner in which it set up its books showing the amounts and nature of the payments to the plaintiff. Had the books reflected the contract to be as testified by Mr. Spicer, there would have been no necessity for notations during 1947 and every year thereafter, of payments by separate checks for commissions. The itemization of the subject matter of these payments is somewhat inconsistent with the theory of a flat sum as total salary and are not explained, and the increase in salary was made retroactive to January 1, 1947, as stated by plaintiff.

It then appears that there was a clear issue as to the agreement covering the year 1947 and until plaintiff left the employ of the defendant, as to the amount that he was to be paid for his services, his testimony being that he was to be paid at the rate of $125.00 per week, an amount equal to $6,500.00 per year, plus commissions on sales and refund for insurance. The defendant contends that the sum total of all that plaintiff was to receive was $125.00 a week which would have amounted to $6,500.00 per year and that this sum was paid. We have discussed the facts at considerable length to test the assignments that the verdict and judgment are contrary to law and against the weight of the

evidence. Manifestly, they are not contrary to law and it is evident that there was testimony which the jury had a right to believe, to support a general verdict for the plaintiff.

The third assignment is that the Court erred in rejecting testimony offered by the defendant. Appellant does not discuss this assignment in its briefs and therefore, we do not. And the same situation is true respecting the fourth assignment, that the Court erred in admitting testimony on behalf of the plaintiff, to which the defendant objected.

The fifth assignment is directed to the refusal of the Court to give two special charges before argument, upon request of the defendant. The second defense has been characterized as absenteeism; the third defense is plaintiff's lack of consideration for defendant's customers.

The special charges were to the effect that if the jury found either of these defenses established, that they should return a verdict for the defendant. The charges were not sound in law because, if true, they would not constitute a bar to plaintiff's recovery for whatever sum was due him under his contract with defendant when he left his employment. The plaintiff had been retained as an employee of defendant company from August, 1945, until his discharge in 1951, and during all of that period, his services had been accepted.

These defenses were available as pleaded and would have been available to the defendant as against damages for breach of contract only without special pleading on its general denial upon the issue whether or not the discharge of the plaintiff was justified. The Court did not err in refusing to give these special charges.

It is averred that the Court erred in its general charge to the jury in not defining the "duty of agent to principal" and in not defining "compromise." The first contention is not well made. There was no error of omission in the charge as given in the respect in which it is challenged.

Upon the claim as to compromise, the appellant is not in position to urge any error. Plaintiff attempted to introduce a letter from the defendant to the plaintiff in which was enclosed a blank check, the subject matter of the letter was an amount of money which defendant was willing to pay to plaintiff and write into the check upon his release of defendant from any further obligation. The defendant objected to the reception of the evidence upon the ground that it was an offer to compromise and the Court sustained the objection. It may be doubtful if it was an offer of compromise but defendant having asserted and maintained its position in the trial court cannot now urge in this Court that such action was error on the part of the trial judge. **Hiller v. Shaw, 45 Oh Ap 303; Willett v. Rowekamp, 58 Oh Ap 465; Sprung v. E. I. duPont de Nemours, 30 Abs 278.**

It is also claimed that the Court should have sustained defendant's motion for a directed verdict because Mr. Spicer and other witnesses for the defendant stated that the plaintiff had been paid in full. This overlooked the fact that the plaintiff testified otherwise and had corroborative circumstances to support his contention.

It is urged that the Court erred in failing to charge upon the question of accord and satisfaction. Accord and satisfaction was not pleaded.

This is necessary, Bates Pleading and Practice, Vol. 2, Sec. 900. Even if accord and satisfaction had been pleaded, there is nothing to support it. No one of the checks was marked as "payment in full", as contended, and thus received under circumstances indicating intention to accept them as full payment. Nor was there any dispute between the parties when the checks were given and accepted, an essential of the defense of accord and satisfaction. We find no prejudicial error in the general charge of the Court.

An exception is noted to the conclusion of the trial judge that upon the facts developed, there was a certain sum of money due the plaintiff for the year 1951. This assumption was well made because upon the record, plaintiff had not been paid in 1951 the amount that was due him for the period during which he had worked, even upon the contract as it was conceded to be by the defendant.

Although the petition alleges a contract from year to year between the parties, the evidence will not support any recovery on this allegation. If it could be said that the contract was from year to year it would, in probability, be from August, the month when plaintiff went to work, until August, when he severed his connection with defendant. So that, even upon plaintiff's own theory of a yearly contract, the full year of his service had expired when he left. There is no proof of any specific loss to plaintiff in damages. So that the claim as to a yearly contract and as to the special charges applicable thereto is of no moment.

The jury, accepting the testimony on behalf of the plaintiff, had the right to conclude that for the year 1947 and each year of the employment thereafter the defendant was obligated to pay to the plaintiff the sum of $125.00 per week, plus commissions and refund for insurance.

The verdict in this case is unusual in that it sets forth not only the total amount of the allowance but also separately the sum awarded to plaintiff for each year, with interest, beginning in 1946 and up to and including 1951. We test these amounts in view of the conclusions which the jury had a right to draw from the evidence.

Allowance for December 31, 1946, was $120.00. We have heretofore indicated that there is no support for this finding.

The allowance for December 31, 1947, was $591.86. The total of net commissions for that year was $339.09. To that may be added $120.00 refund for insurance, and interest which total is in excess of the amount awarded by the verdict.

The December 31, 1948, allowance was $719.00. The commissions for this year were $292.26 together with the $120.00 refund would total $412.26. Interest on this sum, $176.16, or a total sum allowable of $588.42. The jury allowance is in excess by $130.58.

Up to December 31, 1949, the allowance of the jury was $941.62. The commission payments for that year were $479.83; with the refund for insurance, $599.83; interest, $123.39; a total of $732.22. The jury's finding was in excess of the proper amount by $218.40.

The year ending December 31, 1950, the allowance was $657.32. The commissions for that year were $631.84, together with insurance would be $751.84. It is manifest that this allowance is not excessive.

For the year 1951, ending August 16, 1951, the jury allowed $1201.00.

The total amount which was due the plaintiff for the 31 weeks he had worked in 1951, at $125.00 per week, was $3875.00. He had been paid a total of $3520.13. This left a balance of $354.87 that clearly was unpaid when plaintiff left his employment. If, to that you add the $503.62 commissions for the year, together with $70.00 pro rata share of refund on insurance, and interest, the total would be $885.09. The award of the jury for this year is excessive by $227.77.

The jury's verdict is excessive by the sum of $696.75. The correct amount of the verdict should be $3534.05.

If the plaintiff will remit all of the verdict and judgment over the sum of $3534.05, the judgment will be affirmed in that amount  If not, the judgment will be reversed and the cause remanded for a new trial.

WISEMAN, PJ, and MILLER, J, concur.