Argued October 26, modified and remanded December 15, 1965

MARSH ET UX *v.* WALTERS ET UX
408 P. 2d 929

*Kenneth M. Abraham,* Hood River, argued the cause for appellants. On the brief were Parker & Abraham, Hood River.

*Sam Van Vactor,* The Dalles, argued the cause for respondents. On the brief were Brown & Van Vactor, The Dalles.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, LUSK and SCHWAB, Justices.

GOODWIN, J.

W. H. Marsh and his wife brought suit for damages and for an injunction against Rudy R. Walters

and his wife for permitting water to flow upon the land of the plaintiffs. The trial court allowed damages for an admitted trespass and granted the requested injunction. The defendants appeal only from that portion of the decree which contains the injunction.

The admitted trespass consisted in the draining of impounded waters in order to make repairs to a dam. The only issue in connection with the trespass was the amount of damages to be awarded.

Proceeding on the theory that the defendants had established no right, prescriptive or otherwise, to burden their neighbors' lands with water diverted by manmade works, the trial court found that the ponds caused repeated wrongful overflows of the plaintiffs' land. The court thereupon entered the following injunction:

"* * * * *

"2. That the defendants * * * be perpetually restrained and enjoined as follows:

"(a) From diverting the water from * * * springs [which] rise on the defendants' property * * * [f]rom their natural channel * * * and over into the artificial lakes and ponds kept and maintained by the defendants on their said property, when the diversion of said water will result in water overflowing the dams * * * over onto the plaintiffs' property * * *

"(b) From opening the gates in the dam * * * so as to permit water from such ponds or lakes to flow through said gates and over onto the plaintiffs' property * * *.

"(c) From keeping and maintaining * * * any defective * * * device so as to prevent the gates in said dam to be fully closed and hold back the water in the artificial ponds and lakes on defendants' property.

"(d) From draining water in a northerly direction from the artificial lakes and ponds on the defendants' property above described through any

other channels and ditches except those which existed prior to the year 1961, and from deepening or extending any such existing channels for the flowage of water extending from the artificial lakes and ponds towards the plaintiffs' property.

"* * * * *."

The terms of the injunction are challenged by a number of assignments of error, but we believe that the injunction should be stricken in its entirety.

During the trial the defendants attempted to prove that for more than forty years the normal drainage from the two man-made ponds on their land had overflowed through ditches which discharged water upon the plaintiffs' lands. The evidence, if considered, would have been a defense to the prayer for an injunction. The trial court refused to consider the tendered evidence, upon the ground that no prescriptive right had been pleaded. (The defendants' answer was a general denial.)

■■ It is apparent from the colloquy during trial that the defendants were relying upon *Denham et ux. v. Cuddeback,* 210 Or 485, 487, 311 P2d 1014 (1957), for the proposition that a defendant in a trespass action need not plead an adverse user in order to avail himself of it as a defense. In any event, even if reliance on the *Cuddeback* case was misplaced, the court should have allowed the defendants to amend their answer to plead the defense. ORS 16.390; *Morrill v. Rountree,* 242 Or 320, 408 P2d 932 (1966). (Decided on the merits December 15, 1965.) However, we do not believe an amendment was necessary.

*Denham et ux. v. Cuddeback,* supra, was a timber trespass in which the plaintiff, to recover, had to prove his own title to the timber in question. The defendant, who claimed the timber by adverse possession, had

answered by a general denial. In that case we held that the defendant could prove adverse possession, even though it was not pleaded. The case is supported by authority elsewhere. See *Martin v. Norris Public Power Dist.*, 175 Neb 815, 124 NW2d 221 (1963); and Annotation, 39 ALR2d 1426 (1955).

██ The theory which underlies the rule that in trespass cases adverse possession, or the statute of limitations, can be proven under a general denial is that in trespass, at common law, the plea was "not guilty." The defendant could, under the general issue, show any facts tending to refute title in the plaintiff. Whether the rule in the *Cuddeback* case is logically consistent with the theory of code pleading in this state may be questioned, but the rule is well established. Further, the modern view of the function of pleadings is that the court should allow reasonable latitude in order to reach a decision on the merits whenever it is possible to do so without prejudice to the substantive rights of a party. The result in the *Cuddeback* case was a proper one, and we are not disposed to overrule that decision. There is no reason to have one rule for adverse possession of timber land and a different rule when it is claimed that an easement has been acquired by adverse user. *Martin v. Norris Public Power Dist.*, supra.

█ Accordingly, defendants may, in a trespass action, or in a suit to enjoin a continuing trespass, rely upon the *Cuddeback* case, and prove a prescriptive easement under a general denial. In doubtful cases, however, it would be prudent to plead the affirmative defense. Such a pleading clearly would do no harm. See Clark, Code Pleading 606-610 (1947). The case at bar is a good example of a doubtful case, in which

avoidable expense and delay were the price paid for a steadfast devotion to economy in a pleading.

■ The equities, as well as the rules of pleading, are with the defendants. The plaintiffs were fully informed of the defendants' theory during the trial and could claim no surprise or prejudice by reason of the court considering the evidence of adverse user that did come into the record.[1] Indeed, there was no substantial contradiction of the existence of an adverse user for many years. Some degree of intermittent drainage over their land was admitted by the plaintiffs. The plaintiffs' position on the matter is simply that because the asserted easement was not in the pleadings it was not in the case. Such a theory, even if the plaintiffs had been correct in their position on the pleadings, would not appeal to us as an equitable proposition.

■ All parties agree that the ponds had been in place for many years. It is undisputed that some water had drained from the ponds during each of the years, and that the plaintiffs' lands had borne the burden of a certain amount of normal drainage from the defendants' ponds. The gaps in the evidence, if there are any, have to do with the measurement of the burden which the defendants over the years had placed upon the lands of the plaintiffs. The defendants sought to prove the volume of the normal drainage but were not allowed to do so. This refusal was unfortunate. However, the matter need not be reopened for additional evidence on that account, because it is apparent

[1] Insofar as the injunction was concerned, the trial court should have taken the challenged evidence under the equity rule. ORS 17.045 (2). Most of the essential facts did come in, however, through one or more witnesses, in somewhat haphazard fashion.

that the case is not a proper one for a permanent injunction in any event. The plaintiffs obtained all the relief to which they were equitably entitled when they were awarded damages for the single trespass.

■ One trespass that does not threaten further or irreparable damage will not ordinarily support the extraordinary remedy of an injunction against its repetition. *Oldenburg v. Claggett,* 142 Or 238, 241, 20 P2d 234 (1933). There was insufficient proof of a threat of future trespasses to justify an injunction.

The decree below should be modified to strike the injunction. Neither party to recover costs.