CLARA ANDREWS *v.* VICTOR METAL PRODUCTS CORPORATION

5-4091                                             411 S. W. 2d 515

Opinion delivered February 6, 1967
[Amended on denial of rehearing March 13, 1967]

*Frank Lady* and *H. M. Ellis,* for appellant.

*Pickens, Pickens & Boyce,* for appellee.

CARLETON HARRIS, Chief Justice. This case is here on a fourth appeal.[1] Clara Andrews, appellant herein, an employee of Victor Metal Products Corporation, was discharged from her employment on March 12, 1959, at the plant. Thereafter, she filed a claim for unemployment benefits under the provisions of Ark. Stat. Ann. § 81-1107 (Repl. 1960). The ESD local office found that she was disqualified for compensation, because the reason for her discharge was insubordination. An appeal was taken to the Appeals Referee, and then to the

[1]See *Andrews* v. *Victor Metal Products Corp.*, 235 Ark. 568, 361 S. W. 2d 19; *Andrews* v. *Victor Metal Products Corp.*, 237 Ark. 540, 374 S. W. 2d 816; *Andrews* v. *Victor Metal Products Corp.*, 239 Ark. 763, 394 S. W. 2d 123.

Board of Review. The Board of Review affirmed the findings, and Mrs. Andrews appealed to the Jackson County Circuit Court. That court then affirmed the decision of the Board of Review, and, in a subsequent common law action, growing out of an alleged contractual relationship between the parties, we held that the court's affirmance, heretofore mentioned, was not *res judicata* of the latter suit instituted by appellant. Mrs. Andrews was permitted to proceed with her suit against Victor Metal Products Corporation, appellee herein, for breach of contract, and on February 21, 1966, the case was tried before a jury, resulting in a verdict for appellee. From the judgment entered in accord with the verdict, appellant brings this appeal. For reversal, Mrs. Andrews first asserts that the trial court erred in permitting appellee to introduce evidence relating to the reason for her discharge, such evidence being offered for the purpose of justifying the termination, and appellant not having received a written notice of discharge as she contends was required under the terms of the contract.

The company had entered into an agreement with A.F.L. Local 230, Aluminum Workers International Union, of which appellant was a member in good standing. Article II, Section 2, of that agreement provides as follows:

"The Company has the right to discharge or suspend any employee for cause, including failure to comply with published or posted plant rules and the terms of this agreement. Such employe and the president of the Local Union shall be advised in writing by the Company within 24 hours of such discharge (excluding Saturday and Sunday) of the reason for such discharge or suspension; and the employee shall have the right to question if the discharge or suspension was for cause or violation of such plant rules or the terms of this agreement by appeal in writing within three working days through the grievance procedure established herein, including arbitration."

This point for reversal is predicated upon the fact that Mrs. Andrews never received a notice in writing of the reason for her discharge, and this is admittedly true.[2] To briefly summarize the evidence, Johnnie Tubbs, a foreman at appellee company, testified that on the morning of March 12, "Mrs. Andrews' line was down and it is the general practice of Victor when a line is down to send the women to the bench; that is where they do salvage work, tubes are set back on the end of the line;" that Mrs. Andrews refused to go to the bench, stating, "No, I am not going." After making several requests for her to follow the order, he reported the matter to Bezo Nicholson, Chief Steward of the local union. Appellant also refused Nicholson's request to go to the bench. Nicholson testified that, as the union steward,[3] he tried to reason with Mrs. Andrews, telling her that, under the union grievance procedure, she was supposed to follow the orders of the foreman, and then, if she felt aggrieved over the task assigned, file a grievance. Subsequently (within three hours), the matter was discussed in the office of the plant superintendent, C. O. Lewallyn. Those present at the time were Mrs. Andrews, Lewallyn, Joe Nuckolls, president of the local union, Tubbs, and Chester Knox, personnel director. All talked with appellant, endeavoring to ascertain if she would obey the orders of her superior, but Mrs. Andrews would not promise to do so. After a meeting that lasted several hours, she was discharged for insubordination. Nuckolls, president of the local union, testified that Mrs. Andrews would not agree to follow Tubbs' orders. It is not disputed by appellant that she was told on March 12 that she was being "fired" for insubordination.

---

[2]In the last appeal, we held that an individual employee may maintain an action upon a collective bargaining agreement to enforce rights that are personal as distinguished from those that accrue to the union as a whole.

[3]According to the evidence, when a dispute arises, the steward is due to immediately investigate, and see if he can help in solving the difficulty.

To reiterate, it is appellant's contention that not having served her with written notice, as called for in the company's agreement with the union, appellee was not entitled to offer any proof as to the reason for her discharge. In other words, she contends that, to recover, it was only necessary that she establish that she had been damaged, and her testimony as to damages dealt with loss of pay, it being contended that she was entitled to be paid from the date of her discharge until the termination of the contract, a period of 19 months.

We do not agree that, under the circumstances herein, the failure to give notice barred the raising of the defense of insubordination. Let it be borne in mind that we do not have here a case of an employee being discharged without knowing the reason therefor; nor was it even necessary for Mrs. Andrews to guess at the reason. During a period of several hours, her insubordination was discussed with both company and union officials. As previously stated, there is no contention that she did not know the reason for her discharge.[4]

In the New Hampshire case of *Couture* v. *Hebert et al*, 42 A. 2d 691, the question of the necessity for a written notice was before the court. There, Couture instituted action against Hebert for breach of contract. A contract had been entered into whereby Hebert agreed to employ Couture for a period of one year at a salary of $25.00 per week for the first six months, and a salary of $15.00 per week for the remainder of the year. A clause was included which provided that the contract could be terminated by the employer upon giving 30 days *written* notice to the employee, and upon payment of four weeks salary. Couture immediately assumed his duties and rendered services. Shortly thereafter the

---

[4]The company did comply with that portion of the agreement requiring that the president of the union should be advised in writing by the company within 24 hours of the reason for the discharge.

employer orally notified the employee that he was discharged and his services no longer required. The question of cause for discharge was not involved. The trial court held that, because no written notice was given (as required by the contract) Couture was entitled to recover for the entire term of the contract, and rendered judgment for $1,040.00. On appeal, the New Hampshire Supreme Court reversed this judgment, stating:

" 'It [a written notice] is merely the vehicle used * * * to transmit * * * information.' [Citing cases]

" 'It is an old maximum of the law that it compels no man to do a useless act, and the principle was applied in the time of Coke, if not before, to the case of conditional promise.' 3 Williston, Contracts, Rev. Ed., p. 2008.

"The oral notice in the instant case gave the plain-tiff all the information he would have received had a written notice been given. He understood he was through, and acted accordingly. His conduct corroborates his understanding of what the oral notice meant. He was not prejudiced by failure to be given a written notice [citing cases,] and consequently is not entitled to greater rights than if a written notice had been given. If the latter had been given, he would have been entitled to receive four weeks' pay at the prevailing rate at the time, correctly found by the Court to be $25 per week and that is all he is entitled to receive now."

Here, the purpose of the notice was to acquaint the union and Mrs. Andrews with the definite cause of her discharge in contemplation of a hearing before the grievance committee. The union received written notice, and appellant was told explicitly the reason for termination, and this, after a long discussion of her action in refusing to follow the orders of her

superior. How then, was she prejudiced by failure to be given a written notice that could do no more than reiterate the oral notice? Let it be remembered that the failure to give the written notice *did not preclude* Mrs. Andrews' right to go before the grievance committee, for the grievance provision of the contract provides that any grievance may be taken up by the employee or the shop steward within three working days after the occurrence, "and the foreman shall give his answer immediately if he can and in any event within twenty-four (24) hours of the receipt of the grievance; and failing satisfactory settlement at the time the foreman gives his answer, the complaint shall then be *immediately put in writing and signed by the employee,* [emphasis supplied] and the foreman shall then put his decision in writing thereon." If the employee is still dissatisfied, appeal procedures are provided, but Mrs. Andrews *never did take the first step.* She apparently preferred to follow her common law remedy. The record is clear that no complaint was made.

Under appellant's theory, an employee could burn his employer's property, steal it, or stay away from work for an indeterminate period of time, and upon being fired (specifically for one of these reasons), but without written notice, could recover wages for the period of the contract; the employer could not even testify as to the reason for discharge. Under the circumstances cited, we hold that there was substantial compliance by the company in the giving of notice, and appellant was not prejudiced by the failure to receive this notice in writing.

It is also asserted that the court erred in allowing appellee to introduce evidence of justification for appellant's discharge, since appellee's pleadings only amounted to a general denial of the material allegations. We find no merit in this contention. Appellant's complaint alleged that her employment was "termi-

nated *without cause* [emphasis supplied]." It is pointed out in 17A C. J. S. Contracts, Section 549 (B) 1070, that, under a general denial to a complaint which a plaintiff is required to prove in order to maintain his action, a defendant is at liberty to prove anything tending to show that the plaintiff's arguments are untrue, and he may introduce evidence to disprove, wholly or in part, any fact which the plaintiff must establish to show his cause of action. He is permitted to offer evidence which tends to disprove the facts alleged by a plaintiff.

It was necessary that appellant show that she was discharged "without cause." The proof offered by appellee was properly offered to disprove this allegation, it being appellee's defense that the discharge was "with cause."

Affirmed.

George Rose Smith, Jones and Byrd, JJ., dissent.

Conley Byrd, Justice, dissenting. Involved here is a collective bargaining contract requiring the employer, upon discharging an employee, to give both the employee and the president of the union, within twenty-four hours, a written statement of the reason for the discharge. We held, the third time this matter was before the court, *Andrews* v. *Victor Metal Products Corp.*, 239 Ark. 763, 394 S. W. 2d 123 (1965), that the employee, as a member of the union, was entitled to the benefits of the contract provision on discharge, and was also entitled to seek redress by way of damages because of the employer's failure to give the required written notice.

The majority opinion is this day holding that the employer, who has breached his contract by failing to state his reasons for the discharge of appellant in writing as required by the contract, can now come into court and show any justifiable reason for the discharge of ap-

pellant. If the majority opinion is followed to its logical conclusion, it would follow that the employer can disregard the breach of his contract by showing any reason which he thinks justifiable to sustain the discharge, even in a suit by the union to require the employer to re-instate the employee.

The right of discharge of a servant by a master generally, as distinguished from a contract requiring that an employer must specify the reason for discharge in writing, was pointed out by the Supreme Court of New Mexico in *Kiker* v. *Bank Sav. Life Ins. Co.*, 37 N. M. 346, 349, 23 P. 2d 366, 368 (1933) It was there said:

> "Generally, in an action for wrongful discharge, the employer may plead in defense any sufficient cause, though it may have been unknown to him at the time, though his real reason or motive may have been something else, and though another cause may have been expressly assigned. Williston on Contracts, §§ 744, 839; Labatt on Master and Servant, § 189; Page on Contracts (2d Ed.) § 3058; 18 R. C. L. 516; 39 C. J. 89.

> But the parties of course have the right to stipulate the manner in which the employer may terminate the contract. If they stipulate that it shall be by written notice specifying the cause, a discharge specifying no cause, or an insufficient cause, would be wrongful. It follows that, under such a contract, a cause not specified would not be available in defense. *Hughes* v. *Gross et al.*, 166 Mass. 61, 43 N. E. 1031, 32 L. R. A. 620, 55 Am. St. Rep. 375, cited; 18 R. C. L. 516; *Mortimer* v. *Bristol*, 190 App. Div. 452, 180 N. Y. S. 55."

In addition to obliterating the provision of the collective bargaining agreement which required a written statement of the reasons for discharge, the majority opinion suggests that—since the president of the union received written notice and appellant was told explicitly

the reason for her termination—there was a substantial compliance with the contract provision requiring a writing. Thus, concludes the majority, the failure to give written notice to Mrs. Andrews *did not preclude* her right to go before the grievance committee within three working days after the occurrence, nor her right to prosecute an appeal therefrom. There are two answers to this suggestion:

ONE: The same suggestion was made in *Andrews* v. *Victor Metal Products Corp.*, 239 Ark. 763, 394 S. W. 2d 123 (1965), and we said:

> "Finally, it is insisted by the employer that Mrs. Andrews should have exhausted her remedies under the collective bargaining agreement by first appealing to the grievance committee created by the contract. It appears, however, that it was the employer who first breached the contract; so it cannot complain of a later breach by the employee. . . ."

TWO: The employee had the right to rely upon the provisions of the collective bargaining agreement requiring the employer to state in writing the reason for the discharge which would limit the issues before the grievance committee.

Furthermore, the record does not show that, within the three-day time limit for going before the grievance committee, Mrs. Andrews knew or had any knowledge that the president of the union had received a written notice in compliance with the contract.

If it were the intent of a lawyer to draft a collective bargaining agreement to require that an employee discharged for cause should receive written notice stating the reasons for the discharge, how could he have made it plainer than the provision in this instance?

For the reasons set forth, I would reverse and remand for a new trial.

GEORGE ROSE SMITH and JONES, JJ., join in this dissent.