Argued March 7, reversed and remanded April 19, 1973

GASWINT, *Respondent, v.* CASE, *Defendant,*
AMIGO MOTOR HOMES, INC. ET AL,
*Appellants.*
509 P2d 19

*John R. Bakkensen,* Portland, argued the cause for appellants. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener, Portland.

*Nick Chaivoe,* Portland, argued the cause for respondent. With him on the brief were Peterson, Chaivoe & Peterson, Portland.

**TONGUE, J.**

This is an action for damages for wrongful discharge during the term of an employment contract. The case was tried before the court, without a jury. Defendants appeal from a judgment awarding plaintiff $8,500 as compensation for lost income, together with $1,115.37 for expenses incurred in seeking other employment.

Defendants' assignments of error raise four issues to be decided: (1) whether there was a binding and enforceable contract of employment; (2) whether defendant Black Diamond Enterprises, Inc., was a responsible party for breach of the employment contract; (3) whether defendants were entitled under a general denial to offer evidence that plaintiff failed to perform under his alleged employment contract and that he was discharged for cause; and (4) whether plaintiff's evidence of damages for expenses incurred in seeking other employment was insufficient as a matter of law.

In 1969 defendant Amigo Motor Homes, Inc. (Amigo) was engaged in the manufacture of aluminum motorhomes. Amigo's management then decided to design and produce fiber glass motorhomes, but had no experience with fiber glass.

In April 1969, an Amigo representative met plaintiff at a sport show where he was displaying a fiber glass kayak which he had made. Plaintiff then operated Starliner, Inc., a small corporation in Eugene, which had produced kayaks and also two fiber glass van conversion units by a "hand laminated" process, using molds made by plaintiff. Amigo's representative then knew nothing about fiber glass, but knew that plaintiff's plant was small; that plaintiff

was using a "hand laminated" process, and that he "had only a few small molds." They found, however, that plaintiff's van conversion units were "excellent" and did not ask him about the use of automatic equipment.

According to Amigo's representatives, plaintiff told them that he had experience in building some fiber glass parts for motorhomes; that he could make any type of mold, and that he had the qualifications required to manufacture molds for fiber glass motorhomes. They also testified that they wanted these molds completed by December 1969, so as to be in production by January 1, 1970.

According to plaintiff, Amigo's representatives were aware of the nature and extent of his experience with fiber glass; that although he said that he could build a fiber glass motorhome in four months, that period did not expire until the end of December; that what Amigo wanted him to do was to build a fiber glass exterior for its motorhomes, not fiber glass interior parts, and that he was told that December 4 was the deadline for the "exterior" molds.

On August 14, 1969, Amigo delivered a letter to plaintiff offering to buy the assets of Starliner, Inc., for 2,175 shares of stock in defendant Black Diamond Enterprises, Inc. (the sole owner of Amigo's stock), plus $10,000 in cash. The letter also proposed that plaintiff enter into an employment contract with Amigo for a term of one year, at a salary of $800 per month through October 30, 1969, and "thereafter * * * at least $1,000 per month," and that plaintiff move to Forest Grove for full time employment "in the capacity of foreman of the corporation's plastics and fiberglass department." The letter also stated that "if the

foregoing offer to purchase is acceptable please sign and return one copy of this proposal, * * *."

This "offer" was signed by plaintiff.[1] He also went on defendants' payroll as of August 15, 1969, and was then instructed by Amigo to remain in Eugene for a week or 10 days to complete two van conversions then in process, as well as a mold for a van conversion (which plaintiff did not complete, according to defendants). Meanwhile, defendants were waiting for equipment and "adequate room and facilities" for work on fiber glass molds.

Plaintiff then started working full time as a foreman at defendants' plant in Forest Grove and continued such work until November 20, 1969, when he was terminated by defendants. During that period he was paid $800 per month until October 30 and was then paid $1,000 for the month of November.

After his termination plaintiff sought other work and was able to obtain some employment as a salesman on a commission basis. According to his testimony, however, his travel and other expenses exceeded his income from such sales, which apparently totalled $384.63. He also testified that during the period from November 20, 1969, until the expiration of the one-year term under his employment contract with defendants he expended approximately $1,500 in travel and other expenses in seeking other employment. On cross-examination, however, plaintiff stated that approximately 50% of that amount was expended in travel and other expenses in connection with his employment

---

[1] There was no direct testimony that this document was then returned to defendants. At the time of trial, however, defendants had the signed document in their possession and offered a photocopy in evidence.

as a salesman. Plaintiff had no detailed record or receipts of such expenses, but testified that the $1,500 figure was a "conservative estimate." (The trial court's award of $1,115.37 as special damages was apparently computed by deducting commission earnings of $384.63 from $1,500.)

Because the trial court refused to consider defendants' contentions that plaintiff failed to perform the employment contract and that defendants had cause to discharge him and because, for reasons to be stated, we are remanding this case to the trial court, it is not necessary to review the evidence on that subject.

1. *The letter of August 14, 1969, and its acceptance by plaintiff resulted in agreement sufficiently definite in its terms so as to constitute an enforceable employment contract.*

Defendants contend that the letter agreement dated August 14, 1969, was not a valid and binding contract of employment, as held by the trial court, because there was no meeting of the minds upon some material and essential terms and, in particular, no agreement on plaintiff's duties.[2]

---

[2] Defendants contend in their briefs that:

"* * * the alleged agreement does not set forth (1) the areas of plaintiff's responsibility other than as foreman of the fiber glass department, (2) the extent to which plaintiff was to work in the van conversion area, (3) when plaintiff was to move from Eugene to Forest Grove, Oregon, to assume responsibilities at defendant Amigo's fiber glass plant, (4) plaintiff's duties while he remained in Eugene prior to moving to Forest Grove, (5) plaintiff was hired as a 'working foreman' as opposed to a supervisor, (6) requirements as to overtime or weekend work, (7) plaintiff's salary following October 30, 1969, and (8) other terms and conditions ordinarily contained in contracts of this type such as protection against improper use of trade secrets, remedies for breach, governing law and grounds for termination."

■ The letter agreement did, however, set forth the usual elements of an employment agreement in that it stated the term of employment, the amount of compensation, the place of employment, the type of employment, and a general description of the duties to be performed in that it was stated that plaintiff was to be employed "in the capacity of foreman of the corporation's plastics and fiber glass department."

In addition, in this case plaintiff actually worked for a considerable period of time "in the capacity of foreman of the corporation's plastics and fiber glass department," during which he was treated as such by defendants and was paid compensation as specified in the employment agreement. Defendants also performed other requirements of the agreement, including the payment of $10,000 for purchase of the assets of Starliner, Inc.

As stated in 1 Corbin on Contracts 407, § 95 (1963):

> "The fact that one of [the parties] with the knowledge and approval of the other, has begun performance is nearly always evidence that they regard the contract as consummated and intend to be bound thereby."

Under the facts of this case the trial court did not err in holding that the letter agreement of August 14, 1969, included provisions which constituted a valid and enforceable contract of employment.

2. *Black Diamond Enterprises, Inc., was a responsible party.*

Defendants contend that Black Diamond, a Tennessee corporation, was entitled to a judgment of nonsuit because there was no evidence that it was a party to the agreement dated August 14, 1969, and

that there was no evidence that it agreed to employ plaintiff for a period of one year or that it had agreed to assume the liabilities of Amigo.

■ There was evidence, however, that there had been a merger between Black Diamond and Amigo and that Black Diamond had acquired all of the capital stock of Amigo.

Under 8A Tenn Code Ann, § 48-905 (e) and also under ORS 57.480 (5), Black Diamond, as the "surviving" corporation in the merger, was responsible and liable for the obligations of Amigo, including its obligations under the agreement of August 14, 1969. See also 15 Fletcher Cyclopedia Corporations 152, 153, § 7109 (1961). Therefore, plaintiff was not required to prove an express agreement by Black Diamond to hire plaintiff or to assume the liabilities of Amigo.

3. *Because plaintiff's complaint alleged performance of the employment contract by plaintiff and that defendants wrongfully discharged him, defendants were entitled to offer evidence to the contrary under their denial of such allegations.*

The authorities are not in agreement on the question whether, in a case involving the discharge of an employee who has been employed under an employment contract, the employer has the burden to allege and prove as an affirmative defense either the nonperformance of the contract by the employee or that the employer had good cause for discharging him. See *McKelvy v. Choctaw Cotton Oil Co.*, 72 Okla 74, 178 P 882, 883 (1919); *Kenney v. Spicer Furniture Company*, 71 Ohio L Abs 321, 131 NE2d 265, 271 (Ct App 1954). Cf. *Seelman v. Farmers' Co-operative Co.*, 181 Iowa 1228, 165 NW 311, 312 (1917); *Jacobus v.*

Wood; 84 Ga 638, 10 SE. 1099 (1890); *Johnson v. Jessop,* 332 Mich 501, 51 NW2d 915, 917 (1952); and *Morris v. Rosenberg,* 64 Wash 2d 404, 391 P2d 975, 977 (1964). See also *Quick v. Swing,* 53 Or 149, 152-53, 99 P 418 (1909); James, Civil Procedure 141-42, § 4.7 (1965); and 3 Bancroft's Code Pleading 3052-54, §§ 1833-1834 (1926).

■ Regardless of whether the employee or employer may have the burden to allege and prove such matters in the ordinary case, where, as in this case, the employee has undertaken to affirmatively allege not only that he performed the employment contract but also that he was unjustifiably discharged we hold, in accord with what we regard to be the better authority, that the denial of such allegations by the employer entitles the employer to offer evidence to the contrary without the necessity of affirmative allegations. See *Haag v. Revell,* 28 Wash 2d 883, 184 P2d 442, 445 (1947); *Andrews v. Victor Metal Products Corporation,* 241 Ark 889, 411 SW2d 515, 518 (1967); and *Kahn v. Guggenheimer,* 114 NYS 767, 768 (App T 1909). See also Clark on Code Pleading (2d ed 1947) 251-52, 608-09, 621, §§ 40, 96, 97, and Pomeroy's Code Remedies (5th ed 1929) 893, § 543. Cf. *Beemer v. Lenske,* 241 Or 47, 49, 402 P2d 90 (1965).

This is consistent with the view as expressed by this court that under the modern view of the function of pleadings the trial court should allow reasonable latitude in such matters in order to reach a decision on the merits if it is reasonably possible to do without prejudice to the substantive rights of either party. *Marsh v. Walters,* 242 Or 210, 214, 408 P2d 929 (1965). In this case it appears that in the course of pretrial depositions plaintiff was put on notice that

defendants would contend on trial that plaintiff had not performed in accordance with the contract of employment and that defendants had good cause to discharge him. No claim of surprise or prejudice was made by plaintiff at the time of trial.

Accordingly, we hold that the trial court erred in ruling that defendants were not entitled to offer evidence in support of their contentions that plaintiff failed to perform in accordance with the employment contract and that defendants had good cause to discharge him. Although defendants' testimony was received under an offer of proof plaintiff, when called by defendants as an adverse witness, testified to the contrary, resulting in a conflict of testimony on these issues. Because this is an action at law and because it is the exclusive function of the trier of the fact in such an action to resolve such conflicts in testimony, we must remand this case to the trial court for that purpose.

4. *The award to plaintiff for expenses incurred in seeking other employment was improperly computed.*

Because we remand this case to the trial court for further proceedings and because, depending upon the outcome of such proceedings, judgment may again be entered in favor of plaintiff, it is also necessary to consider defendants' final assignment of error.

Defendants contend that the award to plaintiff of $1,115.37 for expenses incurred in seeking other employment was improper for two reasons: (1) plaintiff's testimony that he expended $1,500 for that purpose was wholly undocumented and therefore must be denied because the amount of such expenses was

susceptible of proof, which was not produced, and (2) plaintiff admitted that 50% of that amount related to the costs and expenses incurred by him in making sales on a commission basis, from which he received $384.63.

■ Regardless of whether a claim for loss of profits can properly be based upon such an undocumented estimate, we hold that when the issue to be decided involves the amount of money previously expended by a party, his testimony estimating the total amount thus expended is sufficient evidence to support a finding by the trier of the fact and that the absence of supporting proof goes to the credibility of such testimony, rather than either its admissibility or its sufficiency for that purpose. See *Ginter v. Handy*, 244 Or 449, 453, 419 P2d 21 (1966).

■ In this case, however, plaintiff admitted on cross-examination that only 50% of the estimated sum of $1,500, or $750, was expended in seeking other employment and this was binding upon him as a judicial admission. It follows that the trial court erred in its award to plaintiff of $1,115.37 as incidental damages to reimburse him for such expenses. It also follows that any such award to plaintiff may not properly exceed the sum of $750.

■ However, the sum of $384.63, representing the income from commission sales, need not be deducted from that amount because that income was more than offset by the additional $750 expended in making the sales which produced that income, for which plaintiff is not entitled to reimbursement.

For all of these reasons, the judgment of the trial court is reversed and this case is remanded to it for further proceedings not inconsistent with this opinion.